## Wytheville.

## REYNOLDS' EX'OR V. PETTYJOHN & ALS.

### August 14, 1884.

1. FIDUCIARIES—*Liability.*—Nothing more should be required of a trustee than that he should act in good faith and with the same prudence and discretion that a prudent man is accustomed to exercise in the management of his own affairs. *Davis* v. *Harman*, 21 Gratt. 200.

2. IDEM—*Receiver—Power to Sue.*—A receiver appointed by a court to collect money, after giving certain security, cannot sue until he has given such security. *Davis* v. *Snead*, 33 Gratt. 705.

3. IDEM—*Idem—Laches—Case at Bar.*—R. was appointed receiver and ordered, after giving security as such, to collect certain bonds on C. & L., July, 1860. He gave the security October, 1860. On those bonds he could not have got judgment before March, 1861. The stay law went into effect in April, 1861, and continued until January, 1869. C. &. L. were solvent until their slaves were emancipated. In August, 1868, R. obtained judgment against C. & L. on their bonds, and *fifa* was issued thereon, but was returned " not levied, because of general order from military commandant of the district of Virginia." C. & L. then went into bankruptcy. R. proved the debt in bankruptcy, and it is not apparent but that it may yet be collected from the sale of the lands of C. But in November, 1860, J., one of the persons interested in the fund to be collected by R., gave C. an order on R. for $530 on account of his (J's) interest in said fund, and R. credited that sum on a bond due him individually from C., instead of crediting it on the bond of C. & L., which R. was to collect as receiver.

HELD:

    1. R., the receiver, was not guilty of *laches* and should not be held liable for the loss of the C. & L. debt, if such loss occurred by reason of his failure to sue before March, 1861.

    2, But R.'s duty was to apply the $530 order as a credit first on the bond which he was officially bound to collect, in preference to the

bond due him individually, and he should be held accountable for that sum and its interest as having been actually collected.

Appeal from decree of circuit court of Franklin county, pronounced 16th May, 1882, in the cause of Archer Pettyjohn and others, distributees of the estate of Amanda Taliaferro, deceased, against James Calloway and others. By the said decree it was adjudged that Charles B. Reynolds, deceased, as receiver in the said cause, had collected, as of 8th November, 1860, the sum of $530, and that his estate was liable therefor to the said distributees, and ordered that Stephen Watts, executor of said Reynolds, pay the same *de bonis testatoris.* From this decree said executor obtained an appeal and writ of *supersedeas* from one of the judges of this court. Opinion states the facts.

*George E. Dennis, S. B. Adams, A. A. Phlegar,* for the appellant.

*Dillard,* for the apppellees.

FAUNTLEROY, J., Delivered the opinion of the court:

By a decree of the county court of Franklin county, in which this cause originated, and from which it was removed to the circuit court of Franklin county by operation of law pronounced on the 1st day of February, 1860, Charles B. Reynolds was appointed a commissioner to make sale of certain slaves, the property of the plaintiffs, as the heirs at law of Amanda Taliaferro, deceased. On the 2d July, 1860, the said Reynolds, commissioner, made his report of sale of the slaves in the bill and proceedings mentioned, belonging to the estate of Amanda Taliaferro, deceased, as follows, viz: Robert, a man, to Thomas Callaway, for the sum of $500; Hannah, a woman, to the same for the sum of $300; Reuben, a man, to Pleasant Howell, for $1,480; Amos, a man, to A. J. Finney, for $1,245, aggregating the sum of $3,525. The sale was on a credit of six months, and the

aforesaid purchasers gave their respective bonds for their purchases as aforesaid, which were returned to the court by the commissioner with his said report of sale.

At the same term of the court, on 2d day of July, 1860, a decree was entered in the cause confirming the said sale, and appointing the said Charles B. Reynolds a receiver to collect the money arising from the said sales of the said slaves, and requiring him to execute his bond with approved security in the penalty of $6,000, for the faithful discharge of his duties as said receiver. On the 1st day of October, 1860, the said Reynolds executed his bond, as required, with I. M. W. Leftwich as his surety.

By a decree entered in the cause in the circuit court, April 12th, 1878, "it appearing to the court that Charles B. Reynolds, now deceased, the receiver in this cause has not reported whether he has collected the purchase money of the slaves sold by him as commissioner in this cause, the court doth therefore adjudge, order, and decree that Stephen Watts, executor of the said Reynolds, do render before one of the commissioners of this court an account of the actings and doings of said Reynolds as such receiver, showing how much of the purchase money of said slaves was collected by said Reynolds, and what disposition he made of the same, and how much, if any, remains uncollected.

On the 18th day of October, 1878, the master commissioner returned a report of the settlement of the said receiver, Reynolds' accounts. The report consisted of two statements. In statement No. 1 he did not charge the receiver with the bond of Thomas C. Callaway, who purchased some of the slaves for $800; but in statement No. 2 he charged him with this bond.

The plaintiffs excepted to statement No. 1; and the defendant excepted to the whole report. On the 15th day of May, 1880, the court recommitted the said report to the commissioner, and ordered that he take and report any further evidence that may be adduced before him as to whether the said Charles B. Rey-

nolds, receiver, was able to collect the debt evidenced by the bond aforesaid of T. C. Callaway, or whether he was guilty of such *laches* in not doing so as to make him liable for said debt.

On the 12th of April, 1882, the commissioner made report of all the testimony adduced before him for the plaintiffs and for the defendant; and the cause came on to be heard on the 16th day of May, 1882, on the said report, the evidence filed therewith, and a statement made out at bar by the plaintiff's counsel marked "XX."

When the court, being of opinion that the said receiver collected the sum of $530 as of November 8th, 1860, and that his estate is liable therefor to the heirs of Amanda Taliaferro (the plaintiffs), ordered that statement No. 2, in the commissioner's report, as revised and corrected by special statement "XX," be adopted, and as so revised and corrected be confirmed, and the exceptions thereto be overruled; and overruled exceptions to statement No. 1, except as for the sum of $530, with interest from the 8th of November, 1860, and sustained the same in regard thereto; and, thereupon, the court decreed that the defendant should pay to the plaintiffs, severally, the several sums of money mentioned in said decree with interest as therein stated.

From this decree this appeal is taken.

The appellant insists that the circuit court erred in overruling his exceptions to the commissioner's report, charging the receiver, Reynolds, with any part of the T. C. Callaway bond; and he insists that there is no just liability on the estate of the said Reynolds therefor.

The appellees contend that the said Reynolds, receiver, was guilty of *laches* in not collecting the purchase money from T. C. Callaway—in suffering him to become a bankrupt, and thereby losing his debt; and that, had he sued in time, the debt could have been made out of the personalty of said Callaway, or a lien secured upon his real estate, whereby it would have been made.

It appears that Reynolds was appointed *receiver* 2d of July, 1860, and executed his bond as such October 1st, 1860.

The evidence, adduced by the plaintiffs in the court below, shows that the Callaway debt was well secured. Callaway himself was abundantly good, and the record shows that his surety was unquestionably solvent until after the emancipation of the slaves at the close of the war. On a debt so well secured, even had he the power to sue, he was not, in duty bound, to sue immediately. The rule is, that "nothing more should be required of a trustee than that he should act in good faith, and with the same prudence and discretion that a prudent man is accustomed to exercise in his own affairs." *Davis, Com'r,* v. *Harman & others,* 21 Gratt. 200, and cases there cited.

He was not authorized to sue until so ordered by the court which appointed him. He was but the officer of the court, acting under its orders, and the parties in interest knew what he was doing, and could easily have had an order made directing him to sue.

"The receiver is but the creature of the court; he has no powers except what are conferred upon him by the order of his appointment, and the course and practice of the court. He cannot even institute or defend actions, except by authority." *Davis, Adm'r, &c.,* v. *Snead et als.,* 33 Gratt. 710, and cases cited. The *stay* law was passed April 30th, 1861, and expired January 1st, 1869.

It appears that Reynolds, receiver, did obtain judgment, at the August term, 1868, against Callaway, and Leftwich his surety in the bond; and sued out execution, and placed it in the hands of the sheriff, and that officer made return that it could not be levied because of "general order" from the military commander of the then "District of Virginia."

Not only did Reynolds obtain judgment, and sue out execution, but he has proved the debt in the bankrupt court; and it does not appear from the record but that the debt may yet be collected from the sale of Callaway's real estate by that court.

Under this state of facts, and upon the well known rule applied in the cases cited, we think that the receiver was not guilty of *laches*, and ought not to be held liable for the loss of the Callaway debt.

There is no controversy in this suit about the purchase money for the slaves sold to Howell, and to A. J. Finney. It is admitted that it was collected by the receiver, and disbursed according to the statement made by the commissioner in the cause; and as amended by the plaintiff's counsel at the bar, in special statement "XX," approved and confirmed by the court.

But the circuit court held the estate of the receiver, Reynolds, liable for $530 of the Callaway debt, with interest from the 8th day of November, 1860, which amount, it is stated in the decree complained of, the said receiver collected.

John H. Taliaferro was one of the heirs at law of Amanda Taliaferro, and distributee of the fund in the hands of Reynolds, receiver. He gave an order on Reynolds, November 8th, 1860, in favor of Callaway, for $530 on account of his interest or share in the fund. Reynolds accepted the order, by giving Callaway credit for so much upon an individual debt due to him by Callaway, who also was indebted to him as receiver. Callaway had no right to collect the order and apply the payment, nor Reynolds to receive it as such payment, until Callaway should have paid his indebtedness to the suit. Reynolds takes credit for $530 on account of this order, and he should be held to account therefor. There is no error in the decree complained of, and the same must be affirmed.

DECREE AFFIRMED.