# Richmond.

## McAllister and Others v. Harman and Others.

### November 16, 1899.

Absent, Keith, P.

1. Receivers—*Right to Sue.*—Mere authority to the receiver of a court to collect bonds given for the purchase price of real estate does not authorize him to institute suits in other courts against the obligors in said bonds and others to set aside alleged voluntary and fraudulent conveyances of other real estate made by them.

2. Chancery Practice—*Suit to Enforce Liens—Surplus—Right of Judgment Debtor to Sue in His Own Name to Set Aside Deed of Purchaser.*—A debtor whose land has been sold in a suit in chancery to satisfy liens thereon, but who is entitled to a part of the purchase price, may, after confirmation of the sale, maintain a suit in chancery in his own name to have set aside as voluntary and fraudulent deeds of other lands made by the obligors in the bonds given for such purchase price, although a controversy be pending in the first suit as to the liability of such obligors for the purchase price.

3. Two Suits for Same Cause—*When First Suit Bar to Second.*—In order that the pendency of one suit may be pleaded in bar of another for the same matter, it is necessary, amongst other things, that the parties should be the same, or at least represent the same interests; that the first suit shall be for the same matter as the second (though the second suit need not be for the whole matter embraced by the first); and that the whole effect of the second suit shall be attainable in the first.

Appeal from a decree of the Circuit Court of Augusta county, pronounced June 3, 1899, in a suit in chancery wherein the

appellants were the complainants, and the appellees were the defendants.

*Reversed.*

There was pending in the Circuit Court of Bath county a chancery suit, under the style of *Glendye's Adm'r* v. *Glendye's Heirs.* Under proceedings had in that cause certain lands were sold to Lewis Harman and Carter Berkeley, and the sale was reported to and confirmed by the Circuit Court of Bath county. Under the terms of sale one-half of the purchase money was to be paid in cash, and the other half in twelve months. The decree confirming the sale recites that the appellant, Charles D. Glendye is " the owner in fee of the one undivided one-half of said lands," and appoints William M. McAllister, the general receiver of the court, a receiver in that cause, and directs him to " proceed forthwith to collect from the said Lewis Harman and Carter Berkeley the cash payment on said lands for the one-half thereof belonging to the estate of Robert J. Glendye, deceased." It is stated in the petition for the appeal that, at a subsequent term of the court, to wit, at April term, 1891, the said McAllister was directed to collect the residue of the purchase money due by Harman and Berkeley, but no copy of any such order is filed in the record. No other authority to the receiver to sue is alleged or relied on. At the September term, 1891, of the Circuit Court of Bath county " it was represented to the court that " Harman and Berkeley were in default in the payment of " the first instalment due on the Wilderness property," and thereupon a rule was awarded against them, returnable to the then next term of the court (April, 1892), to show cause, if any they could, why the said Wilderness property should not be resold at their cost and charge. This rule was duly executed and returned and docketed, and the bill in this cause charges that it has been continued from term to term, at the instance of the defendants therein, and is still pending. It is further charged that no answer was filed to

this rule till September, 1894, when an answer was filed setting up as a defence " that there was a cloud upon the title."

The present suit was instituted December 17, 1898, by Charles D. Glendye and William M. McAllister, receiver in the suit of *Glendye's Adm'r* v. *Glendye's Heirs*, and as trustee in a deed from R. J. Glendye, against Lewis Harman, Carter Berkeley and others, the chief object of which is to have set aside, as voluntary and fraudulent, certain deeds made by Lewis Harman, and to subject the property thereby conveyed to the payment of the bonds given for the purchase price of the land sold in the case of *Glendye's Adm'r* v. *Glendye's Heirs*. The bill sets out the facts hereinbefore detailed, and also gives the details of the supposed fraud which vitiates the deeds assailed, and charges the insolvency of Berkeley. The only defence made was by the following plea in abatement:

"And the said defendant, Lewis Harman, in his own proper person, comes and says, that this court ought not to have or take any further cognizance of the suit aforesaid of the said plaintiffs, because the said defendant says that there is now pending in the Circuit Court of Bath county, Virginia, another chancery suit in the short style of *Glendye's Trustee, &c.* v. *Glendye's Heirs, &c.*, in which last named suit certain lands were alleged to have been sold under orders of court therein to this defendant, and the court in said last named suit appointed said William M. McAllister, receiver, to receive purchase money alleged to be due upon said lands by this defendant. This defendant having failed and refused to pay such purchase money, a rule was issued against him in said cause in Bath county requiring him to appear therein and show cause why the said lands should not be resold at his risk and charge for the unpaid purchase money thereon, and he be decreed against for any deficiency resulting therefrom, this defendant answered said rule in said cause in Bath County Circuit Court, and denied any liability upon him to pay said

purchase money or any part thereof; and the said Circuit Court of Bath county is now, and has been for some time past, and was, at the date of the institution of this suit, actively engaged in determining this very question of the liability of this respondent to pay any part of the said alleged purchase money. And this respondent says that this suit first above named, brought against him and others by said McAllister, receiver, etc., is based upon the same alleged liability of this respondent for the purchase price of said land claimed to have been sold to him in said cause in Bath county, the legality and validity of which said alleged obligation or liability on the part of this defendant, the said Circuit Court of Bath county, in the chancery suit aforesaid, is, as aforesaid, now engaged in investigating and determining; and the said defendant further says that neither the said McAllister, nor any one has been directed or authorized by the said Circuit Court of Bath county, or from any other valid source, to institute this or any other suit against the said defendant, on account of the said alleged liability. And this the said defendant, Lewis Harman, is ready to verify.

" Wherefore this defendant prays judgment whether this court can or will take any further cognizance of this suit first above named."

The court sustained the plea and dismissed the bill. From this decree the complainants appealed.

The other facts sufficiently appear in the opinion of the court.

*McAllister & McAllister*, for the appellants.

*A. C. Braxton*, for the appellees.

Buchanan, J., delivered the opinion of the court.

One of the questions involved in this appeal is whether a

receiver of a court who is directed to collect purchase money due for land, the sale of which had been confirmed in the cause can, under his authority to collect, institute suit in another court to set aside an alleged voluntary and fraudulent conveyance of other land made by one of the purchase money debtors in order to subject it to the payment of the debt which the receiver is ordered to collect.

The general rule is that a receiver, who is a mere ministerial officer of the court by which he is appointed, must have its consent and authority, either general or special, as a condition precedent to institution of a suit or other legal proceeding. *Davis* v. *Snead,* 33 Gratt. 709; *Reynolds* v. *Pettyjohn,* 79 Va. 331; and Smith on Receivers, sec. 69.

The receiver, McAllister, had no special authority to institute this suit, nor is there anything in the decree directing him to collect, from which any such authority can reasonably be implied.

The decree must be construed in the light of the facts as they then existed. The sale was confirmed by the same decree which ordered the receiver to collect. Only part of the purchase money was due. There was nothing in the record to show that the land was not worth the amount for which it had been sold, and that upon a resale, if one had to be made, it would not bring that sum. Upon this state of facts the court would not have been justified in giving the receiver authority to institute a suit to set aside an alleged voluntary or fraudulent conveyance which might involve large expenditures in the way of counsel fees and costs, and be wholly unnecessary; and clearly authority which ought to have been refused if asked for, cannot be implied from the order which was made.

The other question is whether the other complainant in the bill, who was the owner of and entitled to a part of the proceeds of the land sold, had the right to maintain this suit. We are of opinion that he had. It is true that the purchasers of the land were contesting the payment of the purchase money on a rule

made against them to show cause why the land should not be resold for the money which the receiver was directed to collect, and it might be that the purchasers would be released from their purchase. In that event, he could recover nothing in this case. On the other hand, if it were held that the purchasers were liable, and the proceeds of the land in that case proved insufficient, then this suit was necessary under the allegations of the bill in order to protect the rights of the complainant. The bill alleges that one of the purchasers was insolvent, and that the other had made a voluntary and fraudulent conveyance of his lands in the months of September and October, 1894—nearly five years before the institution of this suit. If those deeds were only voluntary, and not fraudulent, the complainant might be barred by the statute of limitations from subjecting the lands thereby conveyed to his debt, if he delayed bringing his suit until after the controversy in the other cause was settled.

The pendency of one suit may be set up to defeat another for the same matter, but in order that this may be done it is necessary, among other things, that in both suits the parties shall be the same, or at least shall be such as represent the same interests; that the first suit shall be for the same matter as the second (though the second suit need not be for the whole matter embraced in the first), and that the whole effect of the second suit shall be attainable in the first. 1 Dan. Chy. Pr. 632, &c. (side page); Story's Eq. Pl., secs. 737 to 739; *Watson* v. *Jones*, 13 · Wall. 679.

Tested by this rule, it is very clear that the suit pending in the Circuit Court for Bath county could not defeat this suit. The parties were different, and did not represent the same interests, the objects of the suits were not the same, and the whole relief sought in this suit was not attainable in the other. The alleged voluntary or fraudulent alienees of the land sought to be subjected in this suit were not parties to the other, and could not be made parties to it. They had no interest in, or connection with,

its subject matter, and no decree could be made in it setting aside the conveyance which this suit was brought to set aside.

It follows, therefore, from what has been said that so much of the decree appealed from is erroneous as sustained the plea in abatement as to the right of the complainant Glendye to maintain this suit, and as to him the decree must be reversed, and this court will enter such decree as the Circuit Court ought to have entered.

*Reversed.*