| 96 | 73 |
| 96 | 235 |
| 96 | 73 |
| 98 | 485 |
| 96 | 73 |
| 101 | 155 |

## Wytheville.

### CLARK v. HUTZLER.

#### JUNE 16, 1898.

#### Absent, Cardwell, J.

1. SPECIFIC PERFORMANCE—*Character of Title Required—Misdescription of Property.*—Specific performance of a contract for the sale of real estate will not be decreed on the application of the vendor unless his ability to make such title as he contracted to make is unquestionable; but a false description in a deed under which the vendor claims does not cast a cloud upon his title if, after rejecting so much of the description as is false, there remains a sufficient description to ascertain with legal certainty the subject-matter to which the deed applies.

2. DEEDS—*Repugnant Descriptions of Property Conveyed.*—A statement in a deed that the lot conveyed is situated on the northeast corner of two streets mentioned, when in fact it is on the southwest corner of said streets, does not affect the deed where it appears that the grantor owned no property on the northeast corner, but did own the lot on the southwest corner; that possession of the last-mentioned lot had been taken and held for a number of years, and there are other sufficient descriptions of the lot on the southwest corner contained in the deed.

3. SPECIFIC PERFORMANCE—*Release of Encumbrances not Recorded.*—Where a vendor, along with his deed to the vendee, tenders formal deeds of release of deeds of trust on the property conveyed, to be recorded by the vendor as soon as the vendee accepts the deed tendered him, this is all that is necessary to entitle the vendor to have specific performance. It is not necessary that such releases should be first actually recorded.

4. SPECIFIC PERFORMANCE—*Cloud on Title — Taxes*—As a vendee of land has the right to apply his purchase money towards the payment of taxes on the land, the fact that the taxes for the current year in which the property is sold have not been paid is not a valid objection to the title.

5. SPECIFIC PERFORMANCE—*Change of Circumstances and Delay—Mere Depreciation in Values.*—Where there has been a change of circumstances

or relations, which renders the execution of a contract for the sale of land a hardship on the defendant, and this change grows out of or is accompanied by an unexcused delay on the part of the plaintiff, the change and delay together will constitute a sufficient ground for denying a specific performance when sought by the one thus in default. But the mere depreciation in the value of land, without fault on the part of the vendor, is no reason for refusing him a decree for specific performance.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced January 27, 1897, in a suit in chancery wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*Preston & Leake,* for the appellant.

*Allen G. Collins,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This suit was instituted by W. B. Clark to enforce specific performance of a contract made by him, through his real estate agent, for the sale to H. S. Hutzler of a house and lot on Holly street, in the city of Richmond. Specific performance is resisted by Hutzler upon the ground that the title is doubtful, so doubtful, it is claimed, that a reasonably prudent man would not comply with his purchase in the event of a resale.

It appears that William Mitchell, by deed dated December 1, 1852, conveyed six lots, embracing the one in question, to Thomas Barham, by such a description by points of the compass as to locate them on the northeast corner of Holly and Belvidere streets, where the grantor owned no land, instead of the southwest corner of Holly and Belvidere streets, where

he did own six lots of the exact dimensions and description of those called for in the deed. This description by the points of the compass was, however, not the only identification of the lots contained in the conveyance. The deed goes on as follows: " Said lots of land intended to be hereby conveyed being designated on the plan hereto annexed by the numbers one, two, three, four, five, and six, being a portion of the real estate which was conveyed to the said William Mitchell by James M. Anderson by deed dated 13th day of October, 1852, and of record in Henrico County Court." This deed from Anderson to Mitchell did accurately convey these lots on the southwest corner of Holly and Belvidere streets, and did not convey any land at all on the northeast corner of those two streets. If, however, there was any doubt as to the complete identification of these lots by the reference to the James M. Anderson deed, the misdescription by the points of the compass in the deed from Mitchell to Barham is cured by the fact that attached to that deed as a part thereof is a plat showing the six lots conveyed, accurately by number, with the following statement by the surveyor:

" The above plan represents the ground occupied, Nos. 21, 22, 23, and 24 of the plan of Belvidere, drawn for James M. Anderson, with a change in the arrangement of said lots making them front on Holly street, and running back to an alley ten feet from said street, instead of fronting on Belvidere street."

By deed dated March 28, 1853, Thomas Barham conveyed to A. Sales twenty-eight feet front on Holly street, and one hundred and ten feet deep to an alley, being part of the six lots bought by him from William Mitchell, in which deed the same mistake was made as to the points of the compass as was made in the deed from Mitchell to Barham. This deed, however, concludes with this further description and identification of the lot conveyed: " Said lot of land being a portion of the real estate conveyed to the said Thomas Barham by William

Mitchell, by deed dated 1st December, 1852, and recorded in Henrico County Court, and is designated on a plan annexed to said deed (and to which for greater certainty special reference is hereby made) by the number one (No. 1)."

By deed dated September 27, 1854, A. Sales conveyed to Peter Holloway this same lot, in which the same mistake, as to the points of the compass, was repeated, the deed, however, containing the same further description of the lot as the deed from Barham to Sales, referring to the latter deed as follows : " Said land hereby granted, being the same conveyed to said Sales by Thomas Barham and wife by deed dated 28th March, 1853, and recorded in Henrico County Court office."

By deed dated June 6, 1890, Peter Holloway conveyed to the appellant, W. B. Clark, this lot by a correct description as to the points of the compass as well as otherwise, and the deed tendered by Clark to appellee is likewise free from error in description.

The bill alleges, and it is not denied, that, under and by virtue of said deeds, each of these parties entered into and took possession of the lot on the south side of Holly street, and west of Belvidere street, as described in the deed of appellant, Clark, and that appellant is now in possession of the same, and that there is upon lot No. 1 a frame house which has been standing there more than forty years.

The alleged defects in this title, relied on by appellee to relieve him of the obligation to specifically execute his contract of purchase, consist of the mistake in describing the points of the compass in the deed of December 1, 1852, from Mitchell to Thomas Barham, and repeated in the deed of March 28, 1853, from Barham to A. Sales, and again repeated in the deed of September 27, 1854, from Sales to Peter Holloway.

The considerations which will control a court of equity when asked by a vendor to decree specific performance of a contract for the purchase of lands are well stated by Chief Justice Marshall, as follows : " Both on principle and authority, I think

it is very clear that a specific performance will not be decreed on the application of the vendor, unless his ability to make such a title as he agreed to make, be unquestionable. In a contract for the purchase of a fee-simple estate, if no incumbrance be communicated to the purchaser, or be known to him to exist, he must suppose himself to purchase an unincumbered estate, and a court of equity will not interpose its extraordinary power of compelling a specific execution of the contract unless the person demanding it can himself do all that it is incumbent on him to do. The objection is not entirely confined to cases of doubtful title. It applies to incumbrances of every description which may, in any manner, embarrass the purchaser in the full and quiet enjoyment of his purchase." *Garnett* v. *Macon*, 6 Call 308; *Bryan* v. *Loftus*, 1 Rob. 13; *Christian* v. *Cabell*, 22 Gratt. 82.

Does the defect in description already pointed out constitute any cloud upon the title in question, or suggest any reasonable doubt in respect to it? It is well settled that it does not, that the title is unimpaired thereby, and as free from doubt as if the description by the points of the compass had been omitted.

In the recent case of *Savings Bank* v. *Stewart*, 93 Va. 447, where the authorities are reviewed, Judge Buchanan says: " Where several particulars are given in the description, all of which are necessary to identify the land intended to be conveyed, nothing but what will correspond with all the particulars will pass by the deed; but where the deed contains two descriptions of the land equally explicit, but repugnant to each other, that description which the whole deed shows best expresses the intention of the parties must prevail. The court will look into the surrounding facts, and will adopt that description, if certain and definite, which in the light of the circumstances under which it was made, will most effectually carry out the intention of the parties." It is, he says, "one of the maxims of the law that a false description does not render a deed or other writing inoperative, if, after rejecting so

much of the description as is false, there remains a sufficient description to ascertain with legal certainty the subject-matter to which the instrument applies."

In the case at bar, after rejecting as surplusage the mistaken description of the points of the compass, there remains a clear and explicit description of the land conveyed in each deed ample to identify the lots intended to be conveyed. To the deed of December 1, 1852, from Mitchell to Barham, there is annexed a plat of the six lots thereby conveyed, from 1 to 6 inclusive. The deed from Barham to Sale, conveying the lot in question, describes it as part of the six lots bought by him from Mitchell, and further describes the lot as No. 1 on the plat annexed to the Mitchell deed, to which plat special reference is made for greater certainty of description. The deed from Sale to Holloway refers in express terms to the Barham deed for a description of the lot. In the case cited of *Bank* v. *Stewart*, it is further said that where a map of land is referred to in a deed for the purpose of fixing its boundaries, the effect is the same as if it were copied into the deed.

Land could hardly have been conveyed with more explicit and circumstantial certainty than the lot in question, and, where it is thus clearly and fully identified and described, the circumstance that there has been a mistake in giving the points of the compass creates no cloud or shadow upon the title.

A further objection urged to the title is that, while Peter Holloway owned the lot conveyed to him, he leased to S. R. Owens, in September, 1875, for thirty years, thirty-five feet of land on Holly street, without specifically stating where it was located, it being insisted that from the records it cannot be ascertained whether the lot in question was intended or not. This alleged lease is not in the record. The evidence clearly shows that the five feet referred to is owned by appellant, subject to the lease; that it is not part of the lot sold to appellee, being some distance west of it, and part of a lot upon which a frame house is built that is separated from the house and lot sold appellee by a twenty-foot alley and two brick houses.

The title is further objected to for the reason that certain deeds of trust put upon the lots while owned by Holloway have not been released of record. It appears that formal deeds of release were prepared and executed in each case, and tendered along with a fee-simple deed from appellant, to be recorded by appellant as soon as appellee complied with his purchase. These deeds releasing the deeds of trust referred to are filed with the record before us. It is not necessary that these deeds should be actually of record before appellant can compel a performance of the contract. He has them properly executed, and tenders them with his own deed, and is ready to record them as part of the transaction when the sale is closed up, which is sufficient.

A further objection to the title is that the taxes for 1894 were unpaid. This was not a valid or reasonable objection. The property was sold in August, 1894, and appellee had it in his power to protect himself against the taxes of that year by reserving the amount out of the purchase money, and appellee admits in his deposition that the question of the taxes was not in dispute or regarded as serious.

The last objection—that since the sale the property has depreciated in value, and therefore appellee should not be required to comply with his contract—is wholly without merit. The rule may be laid down as general, applying to either the vendor or vendee, that where there has been a change of circumstances or relations which renders the execution of the contract a hardship to the defendant, and this change grows out of, or is accompanied by, an unexcused delay on the part of the plaintiff, the change and delay together will constitute a sufficient ground for denying a specific performance, when sought by the one thus in default. *Darling* v. *Cummings*, 92 Va. 521.

In the case at bar there was no unreasonable delay on the part of the vendor. The sale was made August 12, 1894, and, after waiting a reasonable time for appellee to examine the

title, which involved several conferences in regard thereto, appellant, on the 2d of October, 1894, tendered a good and sufficient deed in compliance with his contract, which was refused, and in a few days thereafter this suit was instituted to compel performance. If the property has depreciated, appellee is alone responsible, and cannot now visit upon appellant a loss resulting from his own wrong.

Upon the whole case, we are of opinion that appellant is entitled to the relief asked in his bill. The decree appealed from must, therefore, be reversed, and the cause remanded to be proceeded with in accordance with the views expressed in this opinion.

*Reversed.*