## Wytheville.

NEWBERRY AND OTHERS V. FRENCH.

JULY 5, 1900.

Absent, Riely, J.*

1. SPECIFIC PERFORMANCE—*Doubtful Title.*—A purchaser of land at a private sale will not be required to pay his money for a defective or even doubtful title. This is especially true where the purchaser has contracted for a good and sufficient deed, which undertaking is not confined to the form of the deed, but includes a good title.

2. SPECIFIC PERFORMANCE—*Changed Circumstances—Delay.*—It is a general rule, applying to either vendor or vendee, that where there has been a change of circumstances or relations which renders the execution of the contract a hardship on the defendant, and this change grows out of, or is accompanied by, an unexcused delay on the part of the complainant, the change and the delay together will constitute a sufficient ground for denying a specific performance, when sought by one thus in default.

3. VENDOR AND VENDEE—*Knowledge of Title—Estoppel.*—A vendor, who has contracted to deliver a good and sufficient deed to land, and who knows that he has not the legal title thereto, and cannot make such deed, cannot complain of the failure of the vendee to notify him of objections thereto. He cannot deny knowledge of the condition of his own title.

4. RESCISSION—*Decree Against Vendor—Charge on Land.*—Upon rescission of an unrecorded contract for the sale of land, where numerous judgments have been recovered against the vendor between the date of the contract and the time of rescission, the decree in favor of the purchaser for the amount paid on the land will not be made a charge upon the land.

---

*Judge Riely was prevented by sickness from attending this term.

Appeal from a decree of the Corporation Court of the city of Radford, pronounced September 11, 1899, in a suit in chancery, wherein the appellee, suing on behalf of Williams & Porterfield, was the complainant, and the appellant and others were the defendants.

*Reversed.*

The agreement referred to in the opinion is as follows:

This agreement, made this 27th day of August, 1890, between W. A. French, for himself as half owner of the certain property hereinafter described, and as the representative of and acting for H. W. Straley and D. A. French, each interested as hereinafter described in the properties specified, of the first part, and Harman Newberry, J. G. Watts, Jos. S. Gillespie, Henry Bowen, and William Mahone, of the second part—

Witnesseth: That for and in consideration of the sum of fifty thousand ($50,000) dollars, agreed to be paid by the said parties of the second part—one-fourth cash, or its equivalent, on the delivery of a good and sufficient deed for the said property, and the balance in equal sums, at twelve, twenty-four, and thirty-six months, with 6 per cent. interest from the date thereof—the said W. A. French, for himself, and acting for the said Straley and the said D. A. French as aforesaid, bargains and doth sell to the aforesaid parties of the second part that certain tract of land owned equally by the said French and Straley, and forming the larger part of the "Nie Cove," situated in the county of Tazewell, and containing four thousand six hundred and forty-eight and one-half acres (4,648½), more or less; and that further tract, part of the said "Cove," owned by D. A. French, and containing eight hundred and forty-seven and one-half (847½) acres, more or less; and that as security for the deferred payments aforesaid, it is agreed that the said parties of the first part are to retain the vendor's lien; provided, that the parties of the

second part are authorized to anticipate such deferred payments, or any part thereof.

Witness the signatures of the parties hereto on the day and year first above written.

WM. A. FRENCH.
H. NEWBERRY.
J. G. WATTS.
J. S. GILLESPIE.
H. BOWEN.
W. MAHONE.

Witness as to the signatures of all.

S. F. WATTS.
R. B. MAHONE.

The deed of August 28, 1890, conveying the land to the purchasers contained the following clause:

"(It is expressly agreed and understood between the parties to this deed that the sale and conveyances of the land herein described is in gross, and not by the acre.)"

The other facts sufficiently appear in the opinion of the court.

*J. H. Fulton* and *Chapman & Gillespie*, for the appellants.

*S. W. Williams* and *May & May*, for the appellee.

HARRISON, J., delivered the opinion of the court.

This suit was instituted in March, 1893, on the part of the complainant, suing for the benefit of his assignees, asking for the specific performance of so much of a certain contract in writing for the sale of land, as he was interested in, and to have a decree against the appellants for the balance of purchase money due under said contract.

The contract sought to be enforced was made August 27,

1890, and involved the sale of two adjoining tracts of wild, un-improved mountain land, one containing 4,648½ acres, and the other 847½ acres. The purchase price of the smaller tract, which is here involved, was $7,710.28, one-fourth to be paid in cash upon the delivery of a good and sufficient deed, and the balance in three equal payments, at twelve, twenty-four, and thirty-six months, with interest from date at six *per cent.*, the vendor's lien being retained to secure the deferred payments. The larger tract mentioned in the contract is not involved in this controversy, and need not be again referred to.

The purchasers, who are the appellants here, filed an answer and cross-bill, demurring to complainant's bill, resisting the en-forcement of the contract, and asking for its rescission and a decree over for the cash payment which they had paid, and that such decree be made a charge upon the land in question, upon the ground: (1) That no such deed as the contract required had ever been executed or tendered by the vendor; (2) that the laches of the vendor in tendering a good and sufficient deed had been attended by such a change of circumstances and deprecia-tion in the value of the property as to render the enforcement of the contract inequitable, and a great hardship; (3) that the title of the vendor was so defective, doubtful, and uncertain that the purchasers ought not to be required to accept it; (4) that the encumbrances upon the land are far in excess of the price agreed to be paid therefor, and the vendor has since the sale become insolvent, so that his warranty would afford no protec-tion.

It appears that, within a day or two after the contract in question was made, the vendor, D. A. French, and his wife executed a deed, purporting to convey this land to the pur-chasers, and placed the same in the hands of his agent, William A. French. The appellants deposited the cash payment to the credit of the vendor in the Bank of Tazewell, and, at their request, William A. French deposited the deed there also. It

further appears that, for the convenience of the purchasers, who were widely separated, some of them living in distant parts of the State, the deferred purchase money bonds were executed and left with the Bank of Tazewell, with the understanding that they were not to be delivered to the vendor until the attorneys had passed upon the sufficiency of the title and the deed. It further appears that the land sold was unimproved, wild, mountain land, valuable chiefly for its timber and mineral deposits, and that no actual possession thereof was taken by the purchasers, though they did some prospecting upon it for iron ore, both before and after the purchase.

It also satisfactorily appears that the deed left with the bank was not accepted, at any time, as a compliance with the contract, but was deposited with the bank subject to inspection by the attorneys, and an investigation by them of the title. It further appears that the original contract was retained by W. A. French and never recorded; that after considerable delay in getting the contract, which was necessary before the deed could be examined, the attorneys examined the deed, and at once informed their clients that it was not drawn in accordance with the contract; that it conveyed the land in gross, whereas the contract called for the conveyance of a specific number of acres, the acreage controlling the price. W. A. French was informed that the deed would not be accepted in that form, and the cashier of the bank was told that the deed was not satisfactory, and that he must not deliver the bonds.

Nothing further appears to have been done in the premises until February, 1893, nearly thirty months after the date of the contract, when D. A. French and wife executed and tendered another deed to the attorneys of appellants, which they declined to accept, because it did not conform to the contract, and for the further reason that no abstract was furnished with the deed, showing a good title to the land conveyed. Thereupon, this suit

was instituted, complainants filing with their bill an abstract of title.

There were a number of proceedings, not necessary to be here recited, until January, 1895, when an order was entered in the cause referring the same to a commissioner for a report upon the character and condition of the title to the land in question. After due notice to the parties, the commissioner filed his report, covering about forty-six pages of the printed record, returning therewith a great mass of depositions and documentary evidence, which had been produced upon the hearing before him. After pointing out a number of defects in the title, well calculated to cause a purchaser doubt and uncertainty, the commissioner concludes his elaborate report by finding that on the 28th of August, 1890, D. A. French had only an equitable title to the land in question, with judgments amounting to $4,708.54 resting thereon, and that, therefore, the purchasers should not be required to accept the deed tendered August 28, 1890.

He further finds that, at the date of his report, the title to the land was in a worse condition than in 1890, saying: "There are now over $50,000 existing liens upon this land, and it is in evidence that D. A. French is insolvent." The commissioner then arrives at the following conclusion: "The links that your commissioner has failed to find of record in the chain of title, together with the unsatisfactory, doubtful evidence of possession, but especially in view of the enormous amount of judgment liens, leaves no doubt in your commissioner's mind but that the title is such that the defendants should not be required to accept it."

It is well settled that a purchaser of land, at a private sale, will not be required to pay his purchase money and take in exchange therefor a defective or even doubtful title, and especially is this true where, as in the case at bar, he has contracted for a good and sufficient deed, which undertaking is not confined to the form of the deed, but includes a good title. *Garnett* v.

*Macon,* 6 Call, 309, 367; *Jackson* v. *Ligon,* 3 Leigh, 174; *Christian* v. *Cabell,* 22 Gratt. 82; *Hendricks* v. *Gillespie,* 25 Gratt. 181; *Clark* v. *Hutzler,* 96 Va. 73; and *Matney* v. *Ratliff,* 96 Va. 231.

In *Garnett* v. *Macon, supra,* Chief Justice Marshall says: "Both on principle and authority, I think it is very clear that a specific performance will not be decreed on the application of the vendor, unless his ability to make such a title as he agreed to make be unquestionable."

In *Jackson* v. *Ligon, supra,* Judge Carr says: "It is a principle laid down in many cases in equity, that an unwilling purchaser shall not be compelled to take a title with a cloud upon it; and that principle is assuredly strengthened here, where the party has contracted for *a good and lawful right.*"

In *Hendricks* v. *Gillespie, supra,* Judge Anderson says: "A court of equity is anxious to protect a purchaser, and give to him a reasonable security for his title; not compelling him to take a title, not knowing whether it was good or bad, ＊ ＊ ＊ for it would be an extraordinary proceeding for a court of equity to compel a purchaser to take an estate which it cannot warrant to him. It has, therefore, become a settled and invariable rule, that a purchaser shall not be compelled to accept a doubtful title. Nor will he be forced to take an equitable title."

We need not quote further from the numerous authorities announcing and maintaining this doctrine. It is too well settled and understood to call for more than a brief statement of the proposition.

After a careful consideration of the evidence underlying the commissioner's report, no doubt remains of the correctness of his conclusions. It is shown by the record that, at the time of the sale, the vendor did not have the legal title to the land in question, and that a large number of unsatisfied judgments were then docketed against him. It further appears that notwithstanding the deed tendered in August, 1890, was for good rea-

sons rejected, and notwithstanding the first and second purchase-money bonds had in the mean time become due and payable, the vendor made no effort to furnish the purchasers with a good and sufficient deed, and made no demand for the purchase money due until March, 1893, when this suit was brought, in which they file for the first time an abstract, which shows on its face that the vendor could not then make a good and sufficient deed. It further appears that at the time of this suit, there were, in addition to other serious doubts as to the title, more than $50,000 of liens outstanding against the vendor, and he insolvent—the liens amounting to more than six times the entire purchase money agreed to be paid. It is clear that no purchaser could be required to take such a title as the vendor was able to make when this suit was brought.

After the commissioner's report was filed, the appellees, with a view to perfecting the title, filed an amended bill, making as defendants thereto a great number of new parties, both known and unknown. In this new suit various proceedings were had. The propriety of such proceedings in a suit for specific performance may well be doubted, but we are not called upon to express any opinion upon that question, or to determine whether or not the title was thereby perfected, for it is an established fact in the case that at the time the suit was brought the land in question had depreciated in value fifty *per cent.*

The rule may be laid down as general, applying to either the vendor or vendee, that where there has been a change of circumstances or relations which renders the execution of the contract a hardship to the defendant, and this change grows out of, or is accompanied by, an unexcused delay on the part of the plaintiff, the change and delay together will constitute a sufficient ground for denying a specific performance, when sought by one thus in default. *Darling* v. *Cumming,* 92 Va. 521; *Garnett* v. *Macon, supra; Christian* v. *Cabell, supra;* and *Hendricks* v. *Gillespie, supra.*

In *Garnett* v. *Macon*, Chief Justice Marshall says: "As be-
fore such decree was attainable, the value of the article has
greatly changed, that circumstance creates a strong objection
to specific performance"; and, adverting to the change of cir-
cumstances in that case, the learned jurist says: "The same
property, which, if sold in time, would probably have enabled
him to pay for Mantapike, would not, on any reasonable esti-
mate, now enable him to do so."

In *Christian* v. *Cabell*, Judge Staples says that it is the
result of all the cases "that any loss occurring to the property,
before the vendor was in a condition to convey a clear, unin-
cumbered title, must fall on him, and not on the purchaser."

In *Hendricks* v. *Gillespie*, Judge Anderson says: "But if the
vendor has been long in default, and in the mean time a change
of circumstances has taken place, unfavorable to the party re-
sisting the demand, a court of equity will not compel specific
performance." And, in speaking of the change of circum-
stances in that case, says "that there has been a general decline
in the value of lands, is a fact of public notoriety."

In the case at bar, it is established by the evidence that there
had been, at the time suit was brought, a great decline in the
value of the class of property here involved, and that the par-
ticular land in question, as already stated, was not worth more
than fifty cents in the dollar of the price appellees had agreed to
pay. Under such circumstances, a court of equity could not
decree specific performance, and, therefore, the proceedings on
the amended bill, even if permissible, were without avail.

It is further contended by appellees that, after the contract
of sale was completed, W. A. French was no longer the agent
of his brother, the vendor, and that it was thereafter the duty
of appellants to notify the vendor in person of their objections
to the title, it being insisted that he was not informed of such
objections. The contract shows on its face that William A.
French was the agent of the vendor. It is further shown that

the vendor delivered his deed of August, 1890, to William A. French; that the vendor never at any time appeared or had any connection with the transaction in person, and that W. A. French was treated and regarded by all concerned as his agent. But can the vendor be heard to deny knowledge of the condition of his own title, and to complain of appellants for not informing him of their objections thereto? He knew that he had made a contract in which he had agreed to deliver his vendees a good and sufficient deed before anything was paid by them. He is chargeable with knowledge that the deed tendered by him in August, 1890, was not in accordance with the contract, and that he did not furnish an abstract of title. He is chargeable with knowledge of the fact that he had no legal title to the land until about the time this suit was brought, nearly thirty months after he had made the sale. He is chargeable with knowledge of the fact that the land was bound by numerous judgment liens against himself, and that he was insolvent. All these things were quite sufficient to suggest the importance, if he expected to carry out his part of the contract, of getting his title in such condition as to be free from reasonable objection.

For these reasons we are of opinion that the appellees are not entitled to a specific performance of the contract in their bill mentioned, and that the decree appealed from is erroneous. And we are further of opinion that the appellants are entitled to have the said contract rescinded, and to have a decree against the appellee, D. A. French, for the amount paid by them in cash under said contract; but inasmuch as said contract was never recorded, and liens have since been acquired, said decree will not be made a charge upon the land in question.

The decree, therefore, will be reversed, and such decree will be entered here as the lower court should have made, carrying out the views herein expressed.

The decree is as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that the appellees are not entitled to a specific performance of the contract in their bill mentioned, and that the decree appealed from, dated September 11, 1899, is erroneous.

The court is further of opinion that the appellants are entitled to have the said contract rescinded, and to have a decree against the appellee, D. A. French, for $1,927.57, the amount of the cash payment made by them under said contract to D. A. French, with interest thereon from October 10, 1890, the date of its payment.

It is therefore ordered and decreed that said decree be reversed and annulled, and that appellees do pay to the appellants their costs by them expended about the prosecution of their appeal aforesaid here. And this court, proceeding to render such decree as should have been rendered by the Hustings Court of the city of Radford, doth order and decree that the contract in the bill and proceedings mentioned, dated August 27, 1890, be, and the same is hereby, rescinded. And it is further ordered and decreed that the appellee, D. A. French do pay to the appellants, Harman Newberry, J. G. Watts, Henry Bowen, Jos. S. Gillespie, and A. P. Gillespie, nineteen hundred and twenty-seven 57-100 dollars, with interest thereon from October 10, 1890, and that the appellees do pay to the appellants their costs by them about their defence of this suit in said Hustings Court expended. And nothing further appearing to be done in this cause, it is ordered that the same be stricken from the docket.

All which is ordered to be certified to the Hustings Court for the city of Radford.

*Reversed.*