# Richmond

JOSEPH COGITO v. J. A. DART, JR., AND LOUIS M. DART, EXORS., ETC.

April 23, 1945.

Record No. 2899.

Present, All the Justices.

The opinion states the case.

*Haw & Haw,* for the appellant.

*Robert C. Lyne* and *W. S. Cudlipp, Jr.,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

This is a suit for specific performance of a contract for the sale of real estate instituted by J. A. Dart, the owner, against Joseph Cogito, the buyer. From a decree ordering specific performance Cogito obtained this appeal.

The assignments of error are based upon two contentions: one, that title to the property was and is defective, and, two, that time was of the essence of the contract and the seller was guilty of laches in that he failed to take prompt and proper steps to remove the defects.

Cogito, through E. R. Estes, a real estate agent, on October 30, 1940, made a written offer to buy a certain parcel of land lying in the city of Richmond, Virginia, described as follows: "Fronting 330 feet on West 7th Street and running back between Perry and McDonough Street to West 6½ St. * * * The sale is subject to leases on the property provided the title is free from valid objections; to be settled for within 15 days from date hereof." J. A. Dart, in his written acceptance of the offer, agreed to pay "the usual tariff rate of commission" to the real estate agent.

The original offer stated that settlement should be made within 30 days, but, when a copy of the offer was presented to Dart for his signature, he changed the "30 days" to "15 days" and returned it to Estes. This change was not made in other copies held by the interested parties.

On the day after the contract was signed Cogito employed his attorney, George E. Haw, to pass on the title. Haw, in the presence of Cogito and Estes, directed his associate, William C. Miller, Jr., to examine the title to the property.

Neither side introduced a complete abstract of title. Title was traced to or through an old chancery suit, *Nalle's Admx. v. Brander's Devisees,* pending in the Hustings Court of the City of Richmond, Part II, but copies of pertinent papers in this suit were not filed. However, the attorneys for the respective parties testified as to the contents of the records and as to the contents of the papers in the old suit. Exceptions were noted to this testimony, but the exceptions do not seem to have been brought to the attention of the trial court, nor are they urged in this court. Hence, we will determine the issues as the trial court did, on the record as presented.

The attorneys testified that the record in the chancery suit, *Nalle's Admx. v. Brander's Devisees,* showed that all the property involved was owned by an estate (the name of the estate is not given), and bounded on the west by and fronting on 7th street 330 feet, on the north and extending along the south line of McDonough street 130 feet to the land of the Danville and Southern Railway Company, extending along the western line of the Danville and Southern Railway Company 330 feet to Perry street, and then west on Perry street 130 feet to 7th street. This block of land was divided into lots, and on the east side, adjacent to the land of the Danville and Southern Railway Company, a 10-foot alley was indicated on an old plot found in the chancery papers. "Somewhere in the records of this suit it is stated that this alley is for the benefit of the different lots." Lots numbered 3 and 4 fronting 66 feet on 7th street were sold in the suit and in many of the deeds in the chain of title these lots were described as fronting on 7th street and extending eastwardly 120 feet to a 10-foot alley.

Before any other lots in the block were sold, the Danville and Southern Railway Company obtained the consent of the city of Richmond to open a street on the western side of its

property extending from Perry to McDonough street and designated as 6½ street. The western border of this new street was the eastern border of the block of land in question. After this street had been opened, lots 1 and 2 (see sketch below), fronting on 7th street 264 feet, were sold and described as extending eastwardly to 6½ street. These conveyances included 264 feet of the proposed 10-foot alley. The following is a rough sketch of the tract with that part of the alley which was included in the descriptions in the deeds indicated by a dotted line, and that part which purports to bound the two lots on the eastern side by a solid line:

The objection raised to the title is that that strip of land indicated as an alley 10 feet wide and extending 66 feet on the east side of lots numbered 3 and 4, and lying between them and 6½ street, was never conveyed to J. A. Dart or any of his predecessors in title, and that title to it was outstanding in the original owner of the tract.

The phrase, "title free from valid objection," as used in the contract, is synonymous with the phrases "good title," "clear title," or "marketable title." Each means a title free from liens or incumbrances and dependent for its validity on no doubtful question of law or fact. See Annotation, 57 A. L. R. 1284. In other words, a vendor cannot secure a decree of specific performance to force a defective title upon an unwilling purchaser, or, as Judge Carr, in *Jackson* v. *Ligon*, 3 Leigh (30 Va.) 161, 178, said, "an unwilling purchaser shall not be compelled to take a title with a cloud upon it." *Goodloe v. Woods*, 115 Va. 540, 80 S. E. 108; *Newberry v. French*, 98 Va. 479, 36 S. E. 519; 49 Am. Jur. 111; *Clark* v. *Hutzler*, 96 Va. 73, 30 S. E. 469.

"The standard test of the sufficiency of the vendor's title in this respect is its marketability. If the vendor is unable to convey a clear and marketable title, or if there is such uncertainty about the title as to affect its marketable value, specific performance will not be granted." 49 Am. Jur. 111.

After Miller had stated in writing his objections to the title, Norman V. Cavanaugh, an attorney employed by J. A. Dart, had several conferences with him about the matter. As a result, the question was presented to the Lawyers Title Insurance Company. This company reviewed the objections to the title raised by Miller and, notwithstanding these objections, agreed to insure the fee simple title to the entire block provided the city of Richmond by proper ordinance would waive or abandon any right it might have in or to the alley. After this conference with the officers of the Lawyers Title Insurance Company, Miller wrote, signed or initialed the following memorandum: "Get resolution of council abandoning or disclaiming any interest in the alley or the land included therein." The city council and the

board of aldermen of the city of Richmond adopted such an ordinance, which was approved by the mayor on January 16, 1941. However, Miller testified that, before consulting the Lawyers Title Insurance Company, he informed Cavanaugh that he was not acting for the purchaser and that he understood the contract of sale had been abandoned.

The only doubt, as to the title to any part of the block of land, raised by the attorney for the vendee is whether the vendor owned the strip (10 feet by 66 feet) or whether he owned a mere easement over it.

The undisputed facts show that the original plan was to use the 10-foot strip as an alley for an outlet to a public way for the benefit of all the lots in the block. However, the alley was never dedicated to public use. It was never accepted by the city. When the new street on the eastern boundary line of this proposed alley was opened, the original plan was immediately abandoned and thereafter 264 feet of the block were sold and described as extending across the contemplated alley to the new street. J. A. Dart, by different deeds, acquired title to the entire block, including lots 3 and 4. There is no evidence tending to show that the strip 10 feet wide and 66 feet long was ever used as a passageway north and south for the benefit of the other lots. It is of no value to any one except the owners of lots 3 and 4. The original owner of the block, by whom it was subdivided, cannot build upon or close this strip without the consent of the owners of lots 3 and 4. When its contemplated use as a way was abandoned, the boundaries of lots 3 and 4, by operation of law, extended across the bed of the alley to 6½ street.

While there are variations in the descriptions in some deeds in the chain of title, it is clear that it was the evident purpose of the original grantors in the various deeds to convey to the grantees all of the 66 feet extending back to an alley 10 feet wide on its eastern border. Under these circumstances, the present owner has a right to rely on the calls in the immediate deeds to him as well as on the calls in the deeds in his chain of title.

██ The general rule is that the boundary on a way, public or private, includes the soil to the center of the way if owned by the grantor and there are no words or specific descriptions to show a contrary intention. That the way was not laid out at the time of the conveyance does not affect the operation of the general rule. *Lemay* v. *Furtado*, 182 Mass. 280, 65 N. E. 395; 11 C. J. S. 593.

This general rule is the settled law in this Commonwealth. The facts in *Richmond* v. *Thompson*, 116 Va. 178, 81 S. E. 105, were that the owners of a lot, fronting 197 feet on the south line of Marshall street and extending back on the east side of Second street 163 feet, divided this lot into several smaller lots and opened an alley 13 feet wide extending from Second street 197 feet parallel to Marshall street. On the plot, it was stated: "'This 13 foot alley for the use. in common of the owners of the Mansion House property and of the 100 feet, or any part of either." One of the lots in the subdivision, fronting 18 feet on Second street and described as extending eastwardly along the north side of the 13-foot alley, was conveyed to W. M. Thompson. The city of Richmond recognized this alley as a private way and purchased the interest of all parties in the alley except · the interest of W. M. Thompson. It then instituted condemnation proceedings to acquire W. M. Thompson's interest in the alley. The precise question presented was—Did W. M. Thompson own the fee to the bed of the alley?

Judge Buchanan, speaking for the court, said: "The general rule is that a conveyance of land bounded on a highway or private stream includes the soil to the centre of the highway or the centre of the stream, provided the grantor at the time owned to the centre, and there are no words or specific description to show a contrary intent. *Durbin* v. *Roanoke Bldg. Co.*, 107 Va. 753, 60 S. E. 86; *Schwalm* v. *Beardsley*, 106 Va. 407, 409, 410, 56 S. E. 135 and authorities cited; *Hodges* v. *Seaboard, etc., R. Co.*, 88 Va. 653, 663, 665-669, 14 S. E. 380. And where the land conveyed is bounded on a private way the same rule of construction

obtains, though perhaps not so universally. 2 Devlin on Real Estate, sec. 1225h.

\*　　\*　　\*　　\*　　\*　　\*

■ "It also seems to be the prevailing rule, and for like reasons, that when the call in a deed is for an alley, which alley is owned by the grantor and is the limit of his land at that point, it gives title to the bed of the alley."

The reason for this principle of law is well stated in *MacCorkle* v. *Charleston*, 105 W. Va. 395, 142 S. E. 841, 58 A. L. R. 231: "The seller of land can ordinarily have no object in retaining a narrow strip along a line of his grant, particularly a strip subject to the rights of others. The strip is of no value when separated from adjoining property. The grantor's use of and concern for it ends with his conveyance, unless some fortuitous circumstance later makes it worth while. The retention of the strip may seriously retard the improvement and further alienation of the adjoining property, especially if the strip is on a private way. Its proximity to his purchase makes the strip of direct and substantial value to the grantee."

Mr. Chief Justice Campbell expressly approved these principles in *Talbot* v. *Massachusetts Mut. Life·Ins. Co.*, 177 Va. 443, 14 S. E. (2d) 335.

Appellant concedes that the specific terms of the agreement did not make time of the essence of the contract, but contends that the subsequent action of the contracting parties shows that they so construed the contractual provisions.

■ This contention is supported by some evidence, but the overwhelming weight of the evidence shows that, after the vendor was informed of the specific objections raised to his title, he employed an attorney, who, after careful investigation, revealed all the facts and with reasonable promptitude obtained the passage of an ordinance which the parties at that time seemed to think would cure the defects. The finding of the trial court on this issue is binding.

In the light of the undisputed facts and the settled law

in this jurisdiction, the objections raised to the title were not valid. There was no unreasonable delay on the part of the vendor. It is not clear whether the contract required performance in 15 or 30 days from its date. In either event, soon after the verbal objections to his title were called to the attention of the vendor, he immediately advised Mr. Estes, through whom the verbal objections had been made, that he was positive the title could be cleared and that he would insist upon the performance of the contract. After the ordinance had been passed by the city of Richmond, the vendor wrote three letters, two to the purchaser and one to the real estate broker, stating in effect that he was ready and willing to execute a proper deed conveying a good and valid title to the purchaser and requesting immediate performance. The purchaser refused to comply and this suit was instituted in due course. J. A. Dart died while the suit was pending. However, it was revived in the name of his executor.

For the reasons stated, the decree of the trial court is affirmed.

*Affirmed.*