# Richmond

MADBETH, INCORPORATED v. F. M. WEADE AND LILLIAN WEADE.

March 4, 1963.

Record No. 5524.

Present, All the Justices.

The opinion states the case.

*Rutherford C. Lake, Jr.,* for the plaintiff in error.

No brief or argument for the defendants in error.

Carrico, J., delivered the opinion of the court.

F. M. Weade and Lillian Weade, the plaintiffs, filed a motion for judgment against Madbeth, Incorporated, the defendant, seeking to recover the balance alleged to be due on a contract in which the plaintiffs agreed to sell and the defendant agreed to purchase two acres of land in the city of Newport News.

The defendant filed an answer in which it denied that it was indebted to the plantiffs because there were, "certain clouds on the title of the Plaintiffs to said premises," which the plaintiffs had failed to remove. It also filed a counterclaim, asking judgment in its favor against the plaintiffs for $50.00, which it alleged it had paid on account of the purchase price.

The trial court, by agreement of the parties, heard the case without a jury and awarded the plaintiffs a judgment for $2,150.00. We granted the defendant a writ of error.

The evidence discloses that on June 9, 1960, the plaintiffs and the defendant entered into a written contract for the sale and purchase of the land in question for the total price of $2,200.00. The sum of $50.00 was paid at the time of execution of the contract, and the balance of $2,150.00 was provided to be paid on the date of settlement, which was to be on August 1, 1960, "or as soon thereafter as title can be examined and papers prepared allowing a reasonable time to correct defects reported by title examiner."

The contract further provided that the land was to be conveyed, "with a General Warranty deed with the usual covenants of title," and that, "the title is to be free and clear of all liens and indebtedness of every kind."

The plaintiffs executed, acknowledged and delivered to the defendant's attorneys a general warranty deed to the land, containing the required covenants of title, to be held in escrow until the sale could be consummated.

The defendant employed Henry G. Mullins, III, a qualified title examiner, who examined the title to the land which was the subject of

the contract. He conducted his examination of the land records and reported to the defendant that, in his opinion, the title to the land was not marketable. The defendant thereupon refused to pay the balance of the purchase price unless the reported defects were corrected by the plaintiffs.

Mullins also reported to the attorney for the plaintiffs the details of his objections to the title. The plaintiffs did not take any action to correct the alleged defects but, instead, three days after receipt of the report from Mullins instituted the present litigation.

The trial judge held that the title to the land was marketable, that the defendant had breached the contract and that the plaintiffs were, therefore, entitled to recover the balance of the purchase price.

At the trial, the contract between the plaintiffs and the defendant and the deed executed by the plaintiffs were admitted, as evidence, by stipulation. The plaintiff offered no other evidence.

The testimony relating to the marketability of the title consisted solely of that given by Mullins, who was called as a witness by the defendant. He stated that the two acre parcel which was the subject of the contract was a part of a larger tract containing 26.85 acres which was acquired by G. W. Almond in 1911; that Almond, during his lifetime, made several conveyances from the larger tract, the descriptions of the off-conveyances being vague and indefinite, making it difficult to determine of record the location of the properties or their boundaries; that in 1920 Almond conveyed to Edward Montague a three acre parcel described as, "bounded on all four sides by other land of George W. Almond," the deed further providing that, "the said lot, parcel or piece of land containing (3) acres is laid off by certain metes and bounds as agreed upon by all parties concerned;" that the Montague conveyance occurred before the conveyance in May, 1947, by Almond's heirs to the plaintiffs' predecessor in title of the two acre parcel which was the subject of the contract in dispute, and that an examination of conveyances of property "possibly surrounding the Plaintiffs property is of little or no help in determining its boundaries."

Mullins further stated that it was impossible, as a matter of record, to determine the location of the three acre Montague parcel, and that until the validity of the Montague conveyance could be determined and the boundaries of the parcel fixed, "there existed a potential, if not an actual, overlap or encroachment, as a matter of record, on the subsequently conveyed two acres," the subject of the contract in question.

Mullins also said that he had been unable to determine the location and the extent of the servitude, if any, upon the two acre tract of a sewer easement, granted in 1943 by Almond's heirs to the United States.

The witness testified, without objection, that the overlap or encroachment caused by the Montague conveyance, together with the vagueness of the other descriptions, and the questionable location of the sewer easement, rendered unmarketable the title of the parcel involved in the contract. He concluded by saying that he had made application to Lawyers Title Insurance Corporation for a title insurance policy on the land which was the subject of the contract and that the insurance company had refused to issue the policy because "of the present condition of title as reported."

The sole question to be determined on this appeal is whether the trial judge erred in his ruling that the title to the land was marketable. Since such a question is one for the court, and not a jury, *White* v. *Bott*, 158 Va. 442, 460, 158 S. E. 880, his finding is not entitled to the same weight it would be accorded if reached in a factual situation upon conflicting evidence. *Rinehart & Dennis Co.* v. *McArthur*, 123 Va. 556, 567, 96 S. E. 829.

A marketable title is one which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceable enjoyment of the land; one which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value. *Cogito* v. *Dart*, 183 Va. 882, 887, 33 S. E. 2d 759; *McAllister* v. *Harman*, 101 Va. 17, 25, 34 S. E. 474; *Clark* v. *Hutzler*, 96 Va. 73, 76, 77, 30 S. E. 469; Anno. 57 A.L.R. 1284.

In the case before us, the defects disclosed by Mullins' examination were of a serious nature and such as to render doubtful the title of the plaintiffs, both in law and in fact. The condition of the title was such, in our opinion, as to cause a prudent business man, acting with full knowledge of the facts and in the exercise of sound judgment, to refuse to purchase the land unless the defects were removed.

It may well be that the plaintiffs' title is good, that there are, in fact, no encroachments or overlaps upon their land resulting from the

Montague conveyance or the others containing inadequate descriptions. Or, it is possible that title to the plaintiffs' land can now be established, in any event, by adverse possession. And, perhaps it can be determined that the sewer easement does not affect the land in question.

It may or may not be true that, as the defendant suggests in its brief, in a proper proceeding with proper parties before the court, the Montague deed would be held to have been ineffectual to convey any land at all. *Harris* v. *Scott*, 179 Va. 102, 109, 18 S. E. 2d 305, *Blair* v. *Rorer's Adm'r*, 135 Va. 1, 28, 116 S. E. 767.

But these are all matters which would subject the defendant, if it is required to take the title in its present condition, to the hazard of litigation and the necessity to resort to extrinsic proofs. The presence of the defects makes it impossible for the court reasonably to assure the defendant that it will not be embarrassed in the peaceable enjoyment of the land. Under these circumstances, the plaintiffs cannot pass title of the quality they contracted to convey to the defendant, that is, one that is marketable.

It is not a sufficient answer to say, as the plaintiffs contended in the trial court and as the judge appears to have held, that the defendant could have caused a survey to be made of the boundaries of the plaintiffs' land if the title appeared to be defective. As the witness Mullins pointed out, such a survey would have served but little purpose in resolving the doubts created by the poorly described conveyances made by Almond prior to the acquisition of the two acre parcel by plaintiffs' predecessor in title. Much more investigation than that was required to cure the defects. No duty rested upon the defendant to undertake such an investigation.

The burden was on the plaintiffs, when apparent defects in the title were called to their attention, to remove the defects or to show that the title was otherwise marketable. They have failed to follow either course. Under such circumstances, they should not be heard to say that the defendant breached the contract by refusing to accept a title which they, themselves, were unwilling to sustain. *McAllister* v. *Harman*, *supra*, 101 Va. at pp. 25, 26. *Hendricks & als.* v. *Gillespie*, 25 Gratt. (66 Va.) 181, 197, 198.

Accordingly, we are of opinion that the trial court erred in holding that the title was marketable and that the defendant breached the contract. To the contrary, we hold that the title was unmarketable, that the plaintiffs breached the contract and that the defendant was

entitled to a judgment for $50.00 on its counter-claim. We will, therefore, reverse the judgment entered below and here enter final judgment in favor of the defendant against the plaintiffs in the sum of $50.00.

*Reversed and final judgment.*