## CIRCUIT COURT OF LOUDOUN COUNTY

Stephen Paul Figman et al.

v.

Agnes Teresa Davis

Case No. (Chancery) 11505

By JUDGE JAMES H. CHAMBLIN

November 9, 1989

This cause is before the Court on the Demurrer to the Amended Bill of Complaint. The Court heard oral argument thereon on November 3, 1989, and has considered the memoranda filed by counsel.

For the reasons hereinafter set forth, the Demurrer is overruled.

The demurrer to the original Bill of Complaint was sustained only as to the narrow ruling that the complainants could not, as a matter of law under the terms of the contract, compel the defendant to undertake litigation to clear the title to the subject property. The complainants deleted a prayer for such relief in their Amended Bill of Complaint. Having so removed the prayer, the complainants have deleted the only impediment to withstanding the present Demurrer.

While I understand the arguments made by the defendant in support of her Demurrer, I feel that they all rest on matters of proof at the time of trial. The Amended Bill of Complaint states a cause of action for specific performance; however, the relief, if any, which the com-

plainants may obtain will necessarily depend on the facts as adduced at trial.

Let Mr. Hammer prepare a decree overruling the Demurrer and allowing the defendant twenty-one days after entry of the decree to file her Answer.

November 19, 1990

This cause is before the Court on the Amended Bill of Complaint for specific performance of a real estate sales contract and a cross-bill to quiet title and for a declaratory judgment that the contract is invalid. The Court heard evidence *ore tenus* on October 1 and 2, 1990. Thereafter, counsel submitted memoranda in lieu of closing argument.

For the reasons hereinafter set forth, specific performance of the real estate sales contract is denied, and the contract is declared unenforceable. Each of the issues involved in this cause are addressed below.

## I. *Procedural and Evidentiary Issues*

### A. *Motion to Strike*

At the conclusion of the complainants' case in chief, the defendant moved to strike their evidence. The Court took the motion under advisement and allowed the defendant to put on her evidence. The defendant renewed the motion to strike after the complainants completed the presentation of their rebuttal evidence. The motion is denied because I am of the opinion that a trial court should consider all the evidence the parties desire to present in a suit for specific performance because the decreeing of specific performance lies within the discretion of the court. *See, Hawks v. Sparks*, 204 Va. 717 (1963).

### B. *Admissibility of the Testimony of Thom Hanes*

The complainants offered the testimony of Thom Hanes, an experienced commercial banker, on the issue of the marketability of the title to the subject property. The Virginia definition of marketable title set forth in *Madbeth, Inc. v. Weade*, 204 Va. 199, 202 (1963), specifical-

ly includes a component of the ability to "mortgage the property at its fair value." The defendant objected to his testimony because the subject transaction concerned only owner financing and Mr. Hanes's testimony is based upon a hypothetical title insurance commitment which is based on erroneous conclusions by a title examiner. *See* pages 15 and 16 of the defendant's memorandum. The Court allowed· Mr. Hanes to testify and took the question of the admissibility of his testimony under advisement.

I am of the opinion that the expert opinion of an experienced commercial banker is relevant to a determination of the ability to mortgage the property which is material to the question of marketability which is an issue in this cause. *See Madbeth, Inc. v. Weade*, 204 Va. 199 (1963). Hence, Mr. Hanes's testimony is admitted into evidence, and the defendant's objection is overruled.

## II. *Substantive Issues*

The substantive issues raised by the evidence in this cause are as follows:

A. The marketability of the title to the subject property.

B. The applicability of the concept of insurable title to this cause.

C. The obligations of the parties under the terms of the contract.

D. Laches and abandonment.

E. The remedy available to the complainants.

While all the above issues are interesting, I am of the opinion that the terms of the contract set the obligations of the parties and control the resolution of this cause. The crucial provision of the contract dated August 2, 1984 (Complainant's Exhibit No. 5) is as follows:

> It is understood that the title is to be good of record, marketable, and free of encumbrances or no sale. However, a reasonable time shall be allowed the Vendor to correct any defects reported by the title examiner, at the Vendor's cost and expense.

In Virginia the words used in a contract are given their plain and ordinary meaning. *Winn v. Aleda Const. Co.*, 227 Va. 304 (1984); *Berry v. Klinger*, 225 Va. 201 (1983); *Graham v. Commonwealth*, 206 Va. 431 (1965); *Ross v. Craw*, 231 Va. 206 (1986); *Tiffany v. Tiffany*, 1 Va. App. 11 (1985), unless a contrary meaning plainly appears. *See* 4B Michie's Jurisprudence, *Contracts*, Section 50.

The words used in the above-mentioned provision could not be clearer. If the title is not marketable, then there is "no sale" except that the seller "shall be allowed" a reasonable time to correct a title defect. The crucial words are "no sale" and "allowed." "No sale" means that there will be no sale and that neither the seller can be compelled to sell nor the purchaser compelled to buy. This provided a remedy in the event of unmarketability of title; but the parties also agreed to an exception which would allow the seller to correct a defect within a reasonable time. The contract does not require the seller to correct a title defect. If the seller is "allowed" to correct the defect, then she is permitted, but not directed, to do so.

A contract should be read as a whole, and each provision should be given effect if possible. Provisions that appear to be conflicting should be reconciled if there is a reasonable basis for doing so within the language of the contract. *Chantilly Construction Corp. v. Dept. of Highways and Transportation*, 6 Va. App. 282 (1988); *Hooper v. Musolino*, 234 Va. 558 (1988).

The first and second sentences of the above-mentioned provision can be reasonably reconciled by construing the second sentence as allowing the seller at her option to correct a title defect. If the second sentence is construed as a mandatory obligation on the seller to correct a title defect, then the "no sale" provision of the first sentence would have no real meaning. If the seller is required to correct the defects which cause a "no sale," then why have the sentence? If it were intended that the seller have the duty to correct a title defect in any and all events, then there would have been no need for the first sentence.

*Madbeth* does not support the complainant's argument that the above-mentioned provision requires the defendant

seller to correct a title defect. As far as the terms of the contract in *Madbeth* is reported, it did not contain a "no sale" provision if the title is not marketable.

The defendant seller made it clear from the time she was advised of the alleged title defect that she was not going to clear the title. Under the contract, she had no duty to do so even if the title was not marketable. If the title was marketable, then the complainant had a duty to settle within a reasonable time. The complainant did not settle within a reasonable time. The contract called for a settlement within ninety days of August 2, 1984. The complainant has not settled but instead filed this specific performance suit on June 21, 1988. Therefore, it makes no difference whether the title was marketable or not. The complainant failed to close within a reasonable time of the date set for settlement under the contract. Hence, the complainant has breached the contract, and he is not entitled to specific performance.

Because this cause is decided based upon the construction of the contract and the duties thereby imposed on the parties, there is no need for the Court to consider the other issues raised.

Let counsel for the defendant prepare a decree denying specific performance, dismissing the Amended Bill of Complaint with prejudice, and granting the defendant's request in the Cross-bill that the contract is deemed invalid.