Syllabus.

Staunton.

RINER V. LESTER.

September 20, 1917.

1. VENDOR AND PURCHASER—*Rescission—Variance Between Executory Contract and Deed.—* Where, in accordance with an executory contract of sale, there has been a valid delivery and acceptance of a deed, and an execution and delivery of the purchase money bonds, the vendee is concluded from asserting that an exception in the deed of three acres included in the metes and bounds, previously conveyed by the vendor to another, was a material departure from the terms of the executory contract entitling her to a rescission.

2. VENDOR AND PURCHASER—*Construction of Contract.—*In a written contract for the sale of land the vendor agreed to convey to the vendee by deed with general warranty of title, a tract of land supposed to consist of 108 acres, more or less, and all the buildings and improvements thereon, which was conveyed to said vendor by his father by a certain deed, which land had for a number of years been occupied by the vendor as a home. A deed conveying 107½ acres of the land conveyed to vendor by his father by the deed referred to, which had long been occupied by the vendor as a home place, complies with this contract, although this 107½ acres was not all of the tract conveyed to the vendor by his father in the deed referred to, the vendor having twelve years previously conveyed three acres to another party, who had at once built upon and improved the premises. There was evidence that the vendee knew of this sale and from her conduct it appeared that she knew that the three acres in question were not included in her contract with the vendor.

3. VENDOR AND PURCHASER—*Parol Evidence.—*Where, in construing a contract of sale, the knowledge of the vendee of the prior conveyance of three acres of the land in question to another by the vendor, was a material fact for the court to know in determining the probable intention of the parties, the testimony of the husband of the vendee that the vendor had told him that after taking off the three acres from the tract 108 acres would

remain, was not objectionable as in violation of the rule against the use of parol evidence to vary the terms of a written contract.

4. VENDOR AND PURCHASER—*Boundaries—Reference to Prior Deed.*— Where a written contract for the sale of land described the subject matter of the sale as the tract which was conveyed to the vendor by his father by a certain deed, the vendee is charged with knowledge of the boundaries of the tract, as described in that deed.

5. VENDOR AND PURCHASER—*Encumbrances.*—Mere knowledge of any encumbrance at the time of the contract, and the mere taking possession with such knowledge, especially where the contract provides for possession in advance of the conveyance, does not necessarily cut off a defense against the specific execution of a contract for the sale of real estate; but where the circumstances and the conduct of the parties show that the existence of an open, visible, physical encumbrance of the property must have been taken into consideration in fixing the price of the property, the purchaser can neither refuse to complete the purchase nor require an abatement of the price. This rule finds its most frequent expression in cases involving public highways, but this is due mainly to the fact that public highways are always open and visible, and the reason of the rule applies to any visible and obvious physical servitude. In such cases a covenant of general warranty is not broken by the continued adverse use of the road or right of way.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*M. H. Tompkins* and *Jordan & Roop,* for the appellant.

*Harless & Colhoun,* for the appellee.

KELLY, J., delivered the opinion of the court.

On September 2, 1914, W. T. Riner entered into a written contract with Mrs. E. P. Lester whereby he agreed to sell and convey to her "by deed with general warranty of title—that tract of land, supposed to contain 108 acres, more or less, and all buildings and improvements thereon, which was conveyed to said W. T. Riner by his father, David Riner, by deed dated the 1st day of April, 1884, which land—has for a number of years been occupied by said party of the first part (W. T. Riner) as a home." The contract further specified that the consideration was to be $13,000, payable in three instalments, $4,333.33 on January 1, 1915, $4,333.34 on January 1, 1916, and $4,333.33 on January 1, 1917, the last two instalments to be evidenced by interest bearing bonds secured by vendor's retained lien in the deed, which, like the bonds, was to be dated January 1, 1915. Possession of the land "for fall seeding and for the purpose of making improvements" was to be given on the date of the contract, and "possession of any other kind and for any and all other purposes, on April 1, 1915. Subsequent to the date of the contract its terms were changed by mutual consent so as to extend the time for the cash payment from January 1, 1915, to May 1, 1915. A deed dated January 1, 1915, was prepared and executed by Riner which, according to his contention (denied by Mrs. Lester), was duly delivered and was in all respects in compliance with the contract as understood and construed by both parties. Mrs. Lester executed and delivered to Riner her three bonds dated January 1, 1915, for the instalments of purchase money mentioned in the contract, all of which were recited in the deed and secured by a vendor's lien retained therein, and all of which indicated upon their face that they were thus secured.

Possession was given by Riner and assumed by Mrs. Lester in accordance with the contract, and the latter re-

mained in full possession from the spring of 1915 until the date of the decree under review, July 26, 1916, when a receiver was appointed to take charge of the premises.

On May 25, 1915, Mrs. Lester paid Riner $1,000 and on November 13, 1915, $500, as credits on the bond due May 1st in that year, but she failed to make further payments, and this suit was brought by Riner to enforce his vendor's lien. Mrs. Lester answered the bill setting up the defense hereinafter mentioned, and the cause having been matured for hearing upon the evidence introduced by both sides, the court entered a decree, evidently upon the theory that there had been no valid delivery of the deed, denying the relief prayed for in the bill, cancelling the contract, and directing an account to ascertain the purchase money already paid, the value of the rents with which Mrs. Lester should be charged and the improvements on the land with which she should be credited, and other items deemed necessary by the court in order to enable it to render a final decree carrying into effect the rescission of the contract.

The answer sets up four grounds of defense to the bill, two of which are wholly without merit and are not now, as we understand, relied upon by the defendant. The other two grounds will be disposed of in the order in which they appear in the answer.

1. The deed of January 1, 1915, from W. T. Riner to Mrs. Lester described the land as "containing 108 acres more or less, with all the buildings and improvements thereon, being the same land that was conveyed to W. T. Riner by David Riner by deed dated April 1, 1884, except W. T. Riner has conveyed to Letcher Lawrence about three acres off of said land." This general description was followed by one giving the metes and bounds of the original David Riner tract and added these words: "There is included in these metes and bonds and is excepted therefrom the land conveyed to Letcher Lawrence."

It is contended on behalf of Mrs. Lester that this exception of three acres is a material departure from the terms of the contract, and, furthermore, that as it has now been disclosed that the plaintiff does not own the entire boundary agreed to be conveyed, he neither has made, nor can make, a satisfactory deed and must submit to a rescission of the trade.

It is manifest that if there was a valid delivery and acceptance of the deed, and an execution and delivery of the purchase money bonds in accordance therewith, these facts conclude the defendant and end the controversy on this branch of the case.

Both Mrs. Lester and her husband testified that they never saw the deed and never knew of its exact contents until after this suit was brought. We are constrained to the conclusion that the clear weight of the testimony is to the contrary. M. H. Tompkins, the attorney with whom the Lesters had left the original contract and who prepared the deed and the purchase money bonds in question, testified that Mrs. Lester and her husband and W. T. Riner came to his office sometime in January, 1915, for the purpose of having him to prepare these papers, that the exception was discussed and understood by them all, and that the deed after being prepared was read to Mr. and Mrs. Lester, and was then executed and then left with him for them in his capacity as their attorney. He was paid $5.00 by Riner for writing the deed but did not at that time represent him otherwise, his relationship to the transaction and the parties, unquestionally remaining then, as it had theretofore been, that of counsel and attorney for the Lesters. Tompkins further testified that when the deed was prepared, he also prepared the purchase money bonds. It is not denied that these bonds were executed as recited

in the deed, that they were delivered to Riner, and that Mrs. Lester made the two payments thereon in May and November following, as recited above.

After Mrs. Lester had made default in meeting the first payment, Riner spoke to Tompkins about bringing this suit. His reply was that as he had represented the other parties to the contract and deed, he doubted whether he should do so, or words to that effect, but subsequently, according to his statement, he saw the Lesters about the matter and they told him that if a suit had to be brought, they would prefer that he should bring it. Mrs. Lester inferentially contradicts Tompkins in this respect but he is corroborated by a letter which he wrote to G. E. Lester about the time this suit was brought, and by Lester's reply. Tompkins in his letter said to Lester: "You understand my position in this matter. You have always told me that if the suit had to come you would rather I would have it than any one else. I have represented you all in this matter and I hope it can be adjusted along the lines that you all have been trying to arrange. Let me hear from you." Lester, without questioning the facts recited by Tompkins, replied as follows: "Your letter of January 3rd duly received. I am sorry our friend took the position in the matter that he did as it may hurt us in closing the deal which we have pending and which was ready to close. I requested Mr. Stauffer to write you in the matter and I trust he has done so. You will hear further from me within the next day or so, or as soon as I know just what can be done and at what date." The fact that Tompkins was originally the attorney for the Lesters and subsequently with their consent brought the present suit, explains how it happened that the deed, which had never left his possession since the day of its delivery, was produced by him and filed with the bill.

They admit that Tompkins told them he had the deed but claim that he said there was to be no delivery until

the first payment was made, and that they asked no questions about it and never saw it. We think the version of the transaction as given by Tompkins is far more probable upon its face, and is strongly corroborated by the course of the relevant events and circumstances.

But even if the deed was never delivered, the result must be the same. There is no substantial reason upon which the appellee can base any claim that she contracted for any more or any different land than that which she actually gets under the deed. She did not get all the land conveyed to W. T. Riner by David Riner, but she did get what she contracted for, namely: "a tract of land supposed to contain 108 acres, more or less, and all the buildings and improvements thereon which was conveyed to said W. T. Riner by his father, David Riner, by deed dated on the 1st day of April, 1884, *which land—has for a number of years been occupied by said party of the first part (W. T. Riner) as a home."* W. T. Riner had not occupied as a home or otherwise any part of the Letcher Lawrence three acres for a number of years. The original David Riner tract contained about 111 acres, although at the time of the conveyance to W. T. Riner by his father, it was believed to contain about 108 acres. Deducting the three acres sold to Letcher Lawrence, Mrs. Lester gets about 108 acres (107½ acres by actual measurement), the very land with the buildings and improvements thereon which was and had long been occupied by W. T. Riner as a home place, and the very land which her own practical construction of the contract, as conclusively disclosed by her conduct, shows she thought she was getting. This Lawrence three acres was conveyed by W. T. Riner twelve years before he sold the residue of the tract to Mrs. Lester. Lawrence at once took possession of the three acres, built a house and planted an orchard thereon, and otherwise improved the premises. The Lawrence place, at the time of the sale of the 108 acres to

Mrs. Lester, was worth perhaps $4,000.00. The house on that place was in plain view of the residence of Mrs. Lester. Her husband had lived in that immediate neighborhood all his life and she had lived there for something like four years. It is certain that they never once imagined that they were getting the Lawrence land. Indeed, the question as to this three acres would seem to be put to rest by the testimony of G. E. Lester himself. We quote from his deposition: "Q. Mr. Riner contends that Mrs. Lester is getting 107½ acres in the deed which I just handed you. How many acres does she get? A. Mr. Riner stated that the original survey was 111 acres and that with three acres which had been cut off to L. L. Lawrence we would get 108 acres." This was on his direct examination as a witness for his wife, and the following question and answer appear in his cross examination: "Q. I believe you stated Mr. Riner told you the original survey of the Riner land called for 111 acres and that you would get 108 acres after taking off the three acres Mr. L. L. Lawrence would get? A. That is correct." It is true that G. E. Lester claims that he had no authority to act for his wife in the matter, but the record leaves no room to dispute that he did act with her and for her throughout the negotiations leading up to the sale, and subsequently until this suit was brought. The testimony above quoted was not objected to, and was not subject to objection as being in violation of the rule against the use of parol evidence to vary the terms of a written contract. Taking the language of the contract as a whole, its terms are not inconsistent with the meaning contended for by the appellant, and the fact that the appellee had knowledge at the date of the contract that three acres had been sold to Lawrence, was a material fact for the court to know in determining the probable intention of the parties.

2. A second defense set up in the answer and relied upon is, that David Riner, by a deed of December 12, 1884, had granted to one J. L. Stone, a right of way or road along one side of the tract of land sold by W. T. Riner to Mrs. Lester, which right of way or road "had passed to other hands and beyond the control of the complainant." The record discloses that this right of way was created and existed for the benefit of two other tracts of land, one of which, at the date of the contract, was owned exclusively by Mrs. Lester herself, and in the other of which she owned an undivided two-thirds interest, the remaining one-third belonging to a brother of her husband, both interests being subject to a dower right owned by her husband's mother. Her husband had been using and traveling this right of way practically all his life and she had been traveling over it ever since she had been in that neighborhood, which was about four years. The record title to the right of way was plainly disclosed by deeds directly in the chain of title to the land which she bought from Riner. The right of way is located along one side of the 108-acre tract and she and her husband undertake to claim that while they knew about the road, they did not know it had been carved off or out of the 108 acres. It was plainly included in the boundaries of the land as described in the deed from David Riner to W. T. Riner, and she is charged with knowledge of those boundaries. Independent of and aside from the fact that the right of way was for the benefit of one tract of which she was the exclusive owner at the time of the contract, and of another tract in which she owned an undivided two-thirds interest—extinguishing the easement as to the one and showing the improbability of loss or inconvenience, if not indeed a benefit, to her from the easement as to the other—she bought with knowledge of it, she took and held possession and never once complained about it or urged its existence as an excuse for refusing to carry

out the contract until after this suit was brought. Mere knowledge of an incumbrance at the time of the contract, and the mere taking possession with such knowledge, especially where the contract provides for possession in advance of the conveyance, does not necessarily cut off a defense against the specific execution of a contract for the sale of real estate; but where the circumstances and the conduct of the parties show that the existence of an open, visible, physical incumbrance of the property must have been taken into consideration in fixing the price of the property, the purchaser can neither refuse to complete the purchase nor require an abatement of the price. This rule finds its most frequent expression in cases involving public highways, but this is due mainly to the fact that public highways are always open and visible, and the reason of the rule applies to any visible and obvious physical servitude. In such cases a covenant of general warranty is not broken by the continued adverse use of the road or right of way. See *Deacons* v. *Doyle,* 75 Va. 258, 261; *Bennett* v. *Booth,* 70 W. Va. 264, 73 S. E. 909, 39 L. R. A. (N. S.) 618; Maupin on Marketable Title to Real Estate, section 85, pp. 196, 197, 306-309; *Sachs* v. *Owings,* 121 Va. 162, 92 S. E. 997, 1000.

In view of our conclusion upon the facts of the case, the question discussed by counsel, as to whether this must be regarded as a suit to enforce a vendor's lien or as a suit to specifically enforce the contract, is immaterial. In either event, the complainant is plainly entitled to a decree for the sale of the land, to satisfy the purchase money; and the decree complained of will accordingly be reversed and annulled and the cause remanded to the lower court for further proceedings to be had in accordance with this opinion.

*Reversed.*