PRESENT: All the Justices

AUDREY LEA HAISFIELD and
LAUREL RIDGE, LLC

v.   Record No. 012881

KENNETH R. LAPE, TRUSTEE
OF THE KENNETH R. LAPE LIVING TRUST and
BARBARA GSAND LAPE, TRUSTEE
OF THE BARBARA GSAND LAPE LIVING TRUST

                                        OPINION BY
                                JUSTICE DONALD W. LEMONS
                                    November 1, 2002

KENNETH R. LAPE, TRUSTEE
OF THE KENNETH R. LAPE LIVING TRUST and
BARBARA GSAND LAPE, TRUSTEE
OF THE BARBARA GSAND LAPE LIVING TRUST

v.   Record No. 020092

AUDREY LEA HAISFIELD and
LAUREL RIDGE, LLC

            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge

        In this consolidated appeal, we consider whether a "line-of-sight" or "view" easement[*] renders title to the property at issue unmarketable, thereby justifying the buyers' refusal to close the transaction.

                I.   Facts and Proceedings Below

        On February 14, 2000, Audrey Lea Haisfield and Laurel Ridge, LLC (collectively, "Haisfield") entered into a land sale

_____

        [*] The trial court and the parties have used interchangeably the terms "line-of-sight easement," "view easement" and "restrictive covenant."

contract ("Purchase Agreement") with Kenneth R. Lape, Trustee of the Kenneth R. Lape living trust and Barbara Gsand Lape, Trustee of the Barbara Gsand Lape living trust (collectively, the "Lapes"). The Purchase Agreement was for the sale of approximately 99 acres in Albemarle County owned by the Lapes and referred to as Laurel Ridge Farm ("Laurel Ridge"). Laurel Ridge was once part of a larger piece of land that encompassed approximately 148 acres owned by the Lapes known as Oakmont Farm. In 1994, the Lapes conveyed approximately 48 acres ("Oakmont") of Oakmont Farm to Dr. Hamilton Moses, III and Alexandra G. Moses (the "Moseses"). At the time of the Purchase Agreement, Oakmont Farm was two separate parcels: Oakmont, owned by the Moseses and Laurel Ridge, owned by the Lapes.

The Purchase Agreement required Haisfield to deposit $50,000 with McLean Faulconer, Inc., a real estate firm, as an earnest money deposit to be held in escrow. Further, the Purchase Agreement provided that "[s]hould Purchaser default and/or breach this [Purchase Agreement], the Seller shall be entitled to retain the earnest money deposit of $50,000.00 as liquidated damages in lieu of all other remedies provided at law or in equity against the Purchaser."

A closing date of June 30, 2000 was set. On June 29, 2000, through an agent, Haisfield notified the Lapes that the chain of title to Laurel Ridge contained a restrictive covenant that

rendered title to the property unmarketable.  The line-of-sight easement, discovered by Haisfield just prior to closing, was found in the 1994 deed conveying Oakmont to the Moseses from the Lapes.  In part, the Oakmont deed contained the following covenant:

> [F]or a period of thirty (30) years from the date of this deed [May 3, 1994], no building shall be built on the current Albemarle County Tax Map Parcel 111-5A [Laurel Ridge] . . . which may be visible from the main residence (Oakmont) located on the property conveyed by this deed.

Haisfield gave the Lapes 60 days pursuant to Paragraph 14 of the Purchase Agreement to cure the defect created by the Moseses' line-of-sight easement.  Further, she maintained that she was justified in refusing to close the transaction and was entitled to the return of her $50,000 earnest money deposit if the defect was not cured.  Paragraph 14 states the following:

> At settlement Seller shall convey the Property to the Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes and otherwise), but subject to such restrictive covenants and utility easements of record which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable. . . . If the examination reveals a title defect of a character that can be remedied by legal action or otherwise within a reasonable time, Seller, at its expense, shall promptly take such action as is necessary to cure such defect.  If the defect is not

3

cured within 60 days after Seller receives
notice of the defect, then Purchaser shall
have the right to (1) terminate this
Contract, in which event the Deposit shall
be returned to Purchaser, and Purchaser
and Seller shall have no further
obligations hereunder[.] . . .

The Lapes disagreed that the line-of-sight easement rendered title to Laurel Ridge unmarketable, and efforts between the parties to reach a settlement in the matter were unsuccessful.

Consequently, on July 28, 2000, the Lapes filed a motion for judgment claiming that Haisfield breached the Purchase Agreement and claiming the $50,000 earnest money deposit plus interest as liquidated damages for the breach. Subsequently, Haisfield filed a grounds of defense and counterclaims against the Lapes maintaining that the Lapes failed to deliver marketable title and asking the court to return to her the $50,000 earnest money deposit.

A trial was held without a jury on May 24, 2001. Evidence was submitted by both parties, and the court conducted a view of the property. In a letter opinion dated June 14, 2001, the trial court held that the line-of-sight easement did not materially or adversely affect the use of the Laurel Ridge property for residential purposes nor did it render title unmarketable under the terms of the Purchase Agreement.

The trial court granted judgment in favor of the Lapes against Haisfield in the amount of $50,000 with interest, but

4

refused any award of attorneys' fees to the Lapes.  From this judgment, Haisfield appeals the trial court's holding that she was in breach of the contract and the judgment entered.  The Lapes appeal the denial of attorneys' fees.

## II.  Analysis

The plain language of paragraph 14 of the Purchase Agreement requires the seller to convey the property by a general warranty deed containing English covenants of title free of all encumbrances but subject to such restrictive covenants and utility easements of record "which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable."  In this appeal, we are only concerned with the marketability of title.  In the interpretation of this provision of the Purchase Agreement, we are guided by an oft-cited principle of contract interpretation:

> Words that the parties used are normally given their usual, ordinary, and popular meaning.  No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995).

The plain meaning of paragraph 14 is that, if a particular restrictive covenant or utility easement does render the title unmarketable, the seller will have failed to perform in

5

accordance with its terms unless the defect is remedied within a reasonable time.  While it is true that paragraph 14 of the Purchase Agreement operates as a waiver of objection to certain easements or restrictive covenants, a restrictive covenant that renders title unmarketable is not one of them.  If the line-of-sight easement constitutes a restrictive covenant that renders title unmarketable, and the defect is not removed within a reasonable time, Haisfield is entitled to terminate the contract without penalty.

In Madbeth, Inc. v. Weade, 204 Va. 199, 202, 129 S.E.2d 667, 669-70 (1963), we stated:

> A marketable title is one which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceable enjoyment of the land; one which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value.

However, not all liens and encumbrances render a title unmarketable.  In Sachs v. Owings, 121 Va. 162, 170, 92 S.E. 997, 1000 (1917) (internal citations omitted), we held that:

> A vendee cannot elect to rescind and treat the contract as rescinded on the ground that the title is not a marketable

6

> title because there are encumbrances on the land purchased, if they are of such character and amount that he can apply the unpaid purchase money to the removal of the encumbrances. This can be done where the amount of the encumbrance is definite, does not exceed the unpaid purchase money due, is presently payable (as was the case with the delinquent tax lien in the instant case), and its existence is not a matter of doubt or dispute, or the situation is not such with respect thereto as to expose the vendee to litigation on the subject.

See also Davis v. Beury, 134 Va. 322, 338, 114 S.E. 773, 777 (1922).

In this case, the amount of the encumbrance is not definite, such as a tax lien or judgment lien. The line-of-sight easement acts as a building restriction upon the property much like the building restrictions found to render title unmarketable in Scott v. Albemarle Horse Show Ass'n, 128 Va. 517, 104 S.E. 842 (1920). In Scott, we agreed with the purchaser's assertion that the building restrictions in the tendered deed were not in compliance with the terms of the contract and rendered title unmarketable. Id. at 529-30, 114 S.E. at 846. Finally, the line-of-sight easement in this case is not an "open, visible, physical [e]ncumbrance of the property [that] must have been taken into consideration in fixing the price of the property . . . ." Riner v. Lester, 121 Va. 563, 572, 93 S.E. 594, 597 (1917). In Riner, we stated that:

7

> where the circumstances and the conduct of the parties show that the existence of an open, visible, physical [e]ncumbrance of the property must have been taken into consideration in fixing the price of the property, the purchaser can neither refuse to complete the purchase nor require an abatement of the [purchase] price.

Id.

The line-of-sight easement in this case is clearly an encumbrance upon the property restricting its use in such a manner as to render the title unmarketable. The existence of the easement is not an open, visible, physical encumbrance of the property that might have been considered in the establishment of a purchase price. The existence of a restrictive covenant that renders title to the property unmarketable is not excepted under the provisions of paragraph 14 of the Purchase Agreement. Under these circumstances, Haisfield was not in breach of the Purchase Agreement by refusing to close the transaction. The trial court erred in holding that Haisfield was in breach and ordering the payment of $50,000 in liquidated damages plus interest. Because we hold that Haisfield was not in breach of the Purchase Agreement, it is unnecessary to resolve the issue of attorneys' fees presented in the Lape's separate appeal, and we will dismiss the appeal. With respect to Haisfield's appeal, we will reverse the judgment

8

of the trial court and enter final judgment in favor of Haisfield.

Record No. 012881, <u>Reversed and final judgment</u>.

Record No. 020092, <u>Dismissed</u>.
