PRESENT:  All the Justices

JAMES T. DENTON

                                                     OPINION BY
v.  Record No. 160999                        JUSTICE WILLIAM C. MIMS
                                              August 31, 2017

BROWNTOWN VALLEY ASSOCIATES, INC.


FROM THE CIRCUIT COURT OF WARREN COUNTY
Dennis L. Hupp, Judge

In this appeal, we consider whether the circuit court abused its discretion by denying a seller specific performance of a contract for the sale of real property.  We also consider whether the court abused its discretion when it determined the amount of attorney's fees to award to the prevailing party under the contract's fee-shifting provision.

## I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

James T. Denton owns a 122.281-acre parcel of real property ("the Property") in Warren County.  In June 2005, Browntown Valley Associates, Inc. ("BVA") contracted to buy the Property from Denton for $740,500, including a $500 purchase money deposit that it placed in escrow with its purchasing agent.  The contract provided that the sale would be settled the following month.  By a series of amendments, the settlement date was postponed to October 2005.  The contract also provided for an award of costs and reasonable attorney's fees to the prevailing party in any action arising out of it.

BVA was unwilling to settle on the amended settlement date.  In December 2005, it notified Denton's listing agent that it was "going to have to drop the contract" because it was unable to reach an agreement with the owner of an adjacent parcel about improvements to a right-of-way.  BVA's purchasing agent offered Denton a release agreement terminating the contract and authorizing the return of the deposit to BVA.  Denton's listing agent countered by

offering him a release agreement terminating the contract and authorizing payment of the deposit to Denton. Denton did not sign either release agreement.[1]

A month later, Denton's listing agent sent him an email urging him to sign her proposed release agreement. He refused, responding that he had "no intention of releasing [BVA] from this contract." He wrote that he had accepted BVA's offer instead of competing offers because it alone had included no contingencies for settlement. He felt that BVA's $500 purchase money deposit on a $740,500 contract indicated that it had made the offer in bad faith, intending to minimize its losses if it later abandoned the purchase for reasons not included as a contingency in the contract. He felt that the contract was enforceable and he intended to enforce it unless he received a better offer from another prospective purchaser.

Denton continued to list the Property for sale intermittently through November 2010 but he did not receive any offers. In April 2011, he filed an amended complaint in the circuit court alleging that BVA had breached the contract, asserting that he was ready and willing to perform, and seeking specific performance by BVA. He also sought an award of costs and attorney's fees. He tendered a deed conveying the Property to BVA.

BVA filed an answer and grounds of defense alleging, among other things, that the contract required Denton to convey marketable title. However, it alleged, his immediate predecessors-in-title claimed a 4.191-acre tract ("the Tract") of the Property by adverse possession, but that neither they nor Denton had obtained a decree quieting title. Thus, BVA continued, Denton was unable to perform the contract because his title in the Tract was not clear

---

[1] BVA's purchasing agent nevertheless returned the deposit to BVA.

and thus he could not convey marketable title in the Property as a whole. BVA also counterclaimed for costs and attorney's fees.[2]

Denton asserted that he had resolved any dispute over ownership of the Tract in a deed dated March 19, 1993, between him and Wayside Inn Limited Partnership ("Wayside"), the owner of an adjacent parcel. The deed purported to settle the boundary between the parcels and each party relinquished any claim to the parcel lying on the opposite side of the boundary. Denton asserted that Wayside thereby relinquished any claim to the Tract, so his title in the Property therefore was clear and marketable.

To rebut Denton's assertion regarding the boundary settlement deed, BVA sought to admit a substitute trustee's deed dated March 4, 1994 and recorded April 22, 1994, conveying Wayside's parcel to NationsBank of Maryland, N.A. ("NationsBank") following a foreclosure sale of the parcel. BVA noted that although Denton's deed with Wayside was dated March 19, 1993, it was not recorded until December 1994, after the March 1994 substitute trustee's deed was recorded. BVA argued that the boundary settlement deed was not in Wayside's chain of title when NationsBank acquired its parcel, so that deed did not resolve the dispute over ownership of the Tract. Denton filed a motion in limine seeking to exclude the substitute trustee's deed. The circuit court denied the motion, and the case proceeded to a bench trial.

At the conclusion of Denton's case, BVA moved to strike the evidence. The circuit court deferred its ruling on the motion until BVA presented its case. After all the evidence was heard, the court further deferred its ruling and heard closing argument. It subsequently entered an order

---

[2] BVA also filed a third-party complaint against its purchasing agent, alleging that by returning the $500 deposit to BVA, the agent had induced it to believe that Denton had accepted the release agreement. The agent filed a demurrer, which the circuit court sustained. These pleadings and the associated proceedings are relevant only as they pertain to BVA's counterclaim for attorney's fees from Denton.

in which it granted the motion, awarded judgment to BVA, and dismissed Denton's amended complaint with prejudice.

Denton filed a motion to reconsider. The circuit court responded with a letter opinion ruling that the motion would be denied.[3]

The circuit court thereafter held a hearing on BVA's counterclaim for an award of costs and attorney's fees. BVA sought an award of $98,673.15 in attorney's fees, plus expert witness fees and costs. After receiving evidence and hearing the testimony of competing expert witnesses called by each party, the court entered a final order awarding BVA $47,800 in attorney's fees, plus expert witness fees and costs.

We awarded Denton this appeal.

## II. ANALYSIS

Specific performance is an equitable remedy. A suit in equity for specific performance is distinct from an action at law for breach of contract. There is no right to specific performance that a court is obligated to enforce. *Cox v. Cox*, 67 Va. (26 Gratt.) 305, 308 (1875); *see also* 1 William Minor Lile, Notes of Lectures on Equity Jurisprudence 224 (1921) ("The most striking feature of the remedy of specific performance is, that it is not regarded as a strict right which the court is bound to enforce, but as an *extraordinary act of grace* on the part of the court, to be granted only where the plaintiff makes out his case fully." (emphasis in original)). He who seeks specific performance bears the burden of proving both that there is a definite contract and that he has performed all that is required of him (or that he is ready and willing to perform at the time of his suit), and that all conditions precedent have been fulfilled. *Cox*, 67 Va. (26 Gratt.) at 308.

---

[3] The record includes no order memorializing this ruling, but the letter is sufficient to show that the circuit court considered the motion, thereby preserving the arguments Denton made in it. *Cf. Brandon v. Cox*, 284 Va. 251, 256, 736 S.E.2d 695, 697 (2012).

Even if all the required proofs are made, the court in equity is not required to grant the relief sought. *Id*. Accordingly, the circuit court's judgment denying specific performance is reviewed for abuse of discretion.

The three principal ways in which a court abuses its discretion are when it fails to consider a relevant factor entitled to significant weight, when it gives significant weight to an improper or irrelevant factor, or when it properly weighs the proper factors but makes a clear error of judgment. *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011).

## A. MOTION IN LIMINE

In his third assignment of error, Denton asserts that the circuit court erred by denying his motion in limine and admitting the substitute trustee's deed. He argues that none of Wayside's successors-in-title have contested his boundary settlement deed or asserted any claim to the Tract since he and Wayside executed that deed. Consequently, "dealings with the property since [the substitute trustee's deed] was made have been inconsistent with" BVA's assertion that the boundary settlement deed was inadequate to resolve any dispute over ownership of the Tract, so the "documents affecting an interest in property" exception to the hearsay rule in Rule 2:803(15) did not apply. He argues that the substitute trustee's deed was not in Denton's chain of title, he had no knowledge of its contents or their veracity, and he could not question any of the parties to it. He also argues that the deed was irrelevant to establish the current ownership of the Tract.

Denton first made the hearsay argument to the circuit court in his motion to reconsider. As noted above, the court's letter ruling that the motion would be denied is sufficient to preserve the arguments he made in it for appeal. *Cf. Brandon*, 284 Va. at 256, 736 S.E.2d at 697. However, the court also ruled that the exhibits he attached to the motion to show that Wayside's

successors-in-title had accepted the boundary lines that he and Wayside agreed to in their mutual deed were inadmissible because they were not timely introduced at trial. Denton has not assigned error to this evidentiary ruling, so we will not consider the exhibits as evidence supporting his argument that the conduct of Wayside's successors-in-title after the boundary settlement deed are inconsistent with BVA's argument. Accordingly, he has failed to establish that the Rule 2:803(15) exception does not apply and that the substitute trustee's deed should not have been admitted.

Regarding Denton's relevance argument, Rule 2:401 defines relevant evidence as "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The validity of the boundary settlement deed to settle the dispute over ownership of the Tract was "a fact . . . of consequence" in the action because Paragraph 19 of the contract required Denton to convey "good and marketable [title,] insurable by a licensed title company with no[] additional risk premium."

> Marketable title is title
>
> which is free from liens or encumbrances; one which discloses no serious defects and is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation or embarrass him in the peaceable enjoyment of the land; one which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value.

*Haisfield v. Lape*, 264 Va. 632, 637, 570 S.E.2d 794, 796 (2002) (quoting *Madbeth, Inc. v. Weade*, 204 Va. 199, 202, 129 S.E.2d 667, 669-70 (1963)). When challenged, the seller bears the burden of proving that his title is marketable. *Lyle v. Andrews*, 217 Va. 192, 194, 227 S.E.2d

686, 688 (1976) (citing *Madbeth*, 204 Va. at 203, 129 S.E.2d at 670); *see also Improved Realty Corp. v. Sowers*, 195 Va. 317, 320, 78 S.E.2d 588, 590 (1953).

The circuit court inferred from the fact that Wayside's parcel had been subject to a deed of trust that the consent of the trustee or beneficiary was required before Wayside could relinquish any interest it may have had in the Tract, but there was no evidence that any such consent had been given. Consequently, the substitute trustee's deed made the validity of the boundary settlement deed "less probable," so the deed was relevant and admissible.

We find no flaw in this reasoning. Accordingly, we will not reverse the circuit court's denial of Denton's motion in limine as an abuse of discretion.

## B. MOTION TO STRIKE

In five assignments of error, Denton asserts that the circuit court erred by granting BVA's motion to strike. In his first assignment of error, he asserts that the court erred because it relied on the substitute trustee's deed, which he again argues was improperly admitted. Having concluded that the court did not abuse its discretion by admitting that deed, we need not consider this argument further.

In his second assignment of error, Denton asserts that the circuit court erred because the contract required BVA to conduct a title examination prior to settlement and that, if BVA had fulfilled this contractual obligation, it could have raised any alleged defect in his title in the Tract in time for him to cure it. In his fourth assignment of error, he similarly asserts that because BVA did not conduct a title examination and adduced no evidence from a title examiner or title insurance company either that there was a genuine dispute over the ownership of the Tract or that any such dispute would make Denton's title in the Property unmarketable, BVA has not shown that he is not willing and able to perform.

7

We disagree with all of these arguments. Regardless of the contract's requirement for a title examination, it is the seller who bears the burden of proving that he has marketable title. *Lyle v. Andrews*, 217 Va. at 194, 227 S.E.2d at 688. That is doubly true where the seller seeks specific performance of the contract. *Cox*, 67 Va. (26 Gratt.) at 308.

The burden of proof encompasses "two related but distinct concepts: (1) [t]he 'burden of production,' which is the obligation to come forward with evidence to make a prima facie case, and (2) the 'burden of persuasion,' which is the obligation to introduce evidence that actually persuades the fact finder to the requisite degree of belief that a particular proposition of fact is true." *SunTrust Bank v. PS Bus. Parks, L.P.*, 292 Va. 644, 652, 791 S.E.2d 571, 575 (2016). "Although the burden of production frequently passes between the parties, the burden of persuasion as to an element of the plaintiff's claim never shifts." *Id.* at 653-54, 791 S.E.2d at 575-76 (internal quotation marks omitted).

Denton's boundary settlement deed initially met his burden of production as prima facie evidence that any dispute over ownership of the Tract had been resolved (and, consequently, that his title was marketable), thereby shifting the burden of production to BVA to rebut that evidence. However, BVA's introduction of the substitute trustee's deed *did* rebut Denton's boundary settlement deed by calling into question Wayside's authority to relinquish any interest in the Tract, thereby shifting the burden of production back to him. He might have met this burden by, for example, impeaching the substitute trustee's deed, or by adducing evidence that the trustee or beneficiary of Wayside's deed of trust had consented to the boundary settlement deed or that no such consent was required under that deed of trust. Denton did nothing. He therefore ultimately failed to meet his burden of persuasion that he held marketable title.

8

In his fifth assignment of error, Denton asserts that the circuit court erred because any dispute over ownership of the Tract is immaterial to the sale of the Property as a whole. He argues that in *Jackson v. Ligon*, 30 Va. (3 Leigh) 161, 179-80 (1831) (opinion of Carr, J.), we held that a "trifling" dispute over "a few acres in a tract of land" does not render title in the whole tract unmarketable. Rather, the parties could be ordered to perform and the seller to compensate for the uncertainty in his title. The 4.191-acre Tract is a negligible fraction of the overall 122.281-acre Property, he continues, so the court should have ordered that remedy in this case.

The circuit court noted that Denton had adduced as evidence a letter from BVA's purchasing agent to him stating that BVA sought to develop a riverfront subdivision. It also noted that Denton's plat showed that the Tract included 200 feet of riverfront property on the Shenandoah River. Finally, it also noted that in *Jackson*, we ruled that performance and compensation could be ordered where the disputed acres "possess[] no particular value in relation to the general tract." *Id.* It then ruled that the holding in *Jackson* did not apply to the facts of this case because the cloud on Denton's title in the Tract was not a trifling dispute, the Tract was a significant part of the Property in light of BVA's development intentions, and Denton had not even offered compensation for the uncertainty in his title.

We agree with the circuit court. Justice Carr's seriatim opinion identifies two factors for courts to consider when weighing whether to order performance and compensation: (1) the magnitude of the deficiency in title, and (2) the value of the area in dispute in relation to the

9

whole property to be conveyed. *Id.* The circuit court did not abuse its discretion; it correctly identified the relevant factors and properly weighed them.[4]

## C. ATTORNEY'S FEES

In three assignments of error, Denton asserts that the circuit court abused its discretion by awarding BVA attorney's fees. In his seventh assignment of error, he asserts that the court erred under the first breach doctrine by awarding attorney's fees at all. He argues that BVA breached the contract first, so it cannot invoke the fee-shifting provision. The court disregarded this argument because he did not plead it as an affirmative defense to BVA's counterclaim for costs and attorney's fees. He contends that the court erred by doing so because the purpose of the pleading requirement is to avoid prejudice, but BVA could not be prejudiced by his assertion that it breached the contract since that was the basis for his underlying claim for specific performance.

The first party to materially breach a contract cannot enforce it. *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001). The first breach doctrine is an affirmative defense. *See Norfolk S. Ry. Co. v. E. A. Breeden, Inc.*, 287 Va. 456, 461-62, 756 S.E.2d 420, 423 (2014). As a general rule, affirmative defenses must be pled to be relied on at trial. *Monahan v. Obici Med. Mgmt. Servs.*, 271 Va. 621, 632, 628 S.E.2d 330, 336 (2006). However, there are three exceptions to the general rule: "(1) where the issue addressed by the affirmative defense was not disclosed in the plaintiff's pleading; (2) where the affirmative

---

[4] In his sixth assignment of error, Denton asserts that the circuit court erred because it should have extended *Peers v. Barnett*, 53 Va. (12 Gratt.) 410 (1855) to relieve a seller from the burden of litigating a quiet title claim when he has had uninterrupted possession of the real property for fifteen years and his claim to it has never been challenged. However, Denton has not indicated where in the record he asked the court to do so, either in his petition for appeal or his opening brief. Rules 5:17(c)(1) and 5:27(c). We have not found any place where he did. Accordingly, this argument has not been preserved for appeal. Rule 5:25.

defense is not an absolute bar to recovery; and (3) where the affirmative defense is addressed by statute." *New Dimensions, Inc. v. Tarquini*, 286 Va. 28, 36, 743 S.E.2d 267, 271 (2013) (internal quotation marks omitted). None of these exceptions apply here, so Denton's failure to plead the first breach doctrine prevented him from raising it at trial.

In his eighth assignment of error, Denton asserts that the circuit court erred by awarding BVA $47,800 in attorney's fees because its attorney's fees affidavit failed to adequately describe the work performed and included charges incurred in relation to BVA's third-party complaint against its purchasing agent. Consequently, he argues, the court's award is inconsistent with the factors we articulated in *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998).

We disagree. As we recently reiterated, in *Chawla* we identified seven non-exclusive factors for courts to consider when weighing the reasonableness of an award of attorney's fees: "(1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate." *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 254, 798 S.E.2d 177, 183 (2017) (internal alterations omitted). In its letter opinion incorporated into its final order, the circuit court expressly referred to each of these factors. Further, the record reflects that the court received evidence and expert opinion testimony to support each of them.

John Foote, BVA's expert witness, testified that he had practiced law for forty-two years, the most recent seventeen years as a partner in a firm specializing in real property. He testified that he had tried five specific performance cases. He testified that BVA's attorneys' individual

11

rates were reasonable for the geographical area in light of their experience and qualifications.

When assessing the reasonableness of the hours billed, he testified that he considered the

duration of the litigation, the capabilities of the attorneys, the contentiousness of the proceedings,

and the vigor of each party's responses to the other's arguments. He testified that he had

examined every billing entry in BVA's affidavit and invoices. He testified that in his opinion,

taken in context, each entry adequately described the related work performed. He testified that

there was no unreasonable duplication. He testified that in light of the quality of representation

on both sides, the complexity of the issues, and the amount of money at stake if BVA was

ordered to purchase the Property, the attorney's fees BVA had incurred were reasonable. When

questioned specifically about the inclusion of attorney's fees incurred in relation to BVA's third-

party complaint, he testified that he compiled a spreadsheet from the affidavits and invoices and

confirmed that those fees were excluded from BVA's request.

Nevertheless, the circuit court ruled that

[t]he failure of [BVA] to have [the] title examined as called for under the contract . . . is a legitimate and greatly significant consideration in my determination of the amount of the award. This, in my view, is one of the 'attending circumstances' as discussed in *Mullins v. Richlands Nat'l Bank*, [241 Va. 447, 449, 403 S.E.2d 334, 335 (1991)]. If a title examination had been performed at the outset, it is very possible, if not likely, that [BVA] would have discovered the title defect upon which this case ultimately turned . . . . This litigation may well have been avoided or greatly narrowed in scope. [BVA] must bear to some significant extent the consequences of its neglect in this regard.

It therefore reduced the award from the $98,673.15 BVA sought to only $47,800.

Accordingly, contrary to Denton's argument, the circuit court correctly identified the

appropriate factors to determine the reasonableness of an award of attorney's fees and properly

weighed them in light of the evidence and testimony adduced by the parties.

In Denton's final assignment of error, he asserts that the circuit court erred by awarding BVA the attorney's fees that it incurred while countering his objections to its award of attorney's fees on the merits of his specific performance claim. He argues that he had reasonable challenges to BVA's evidence and the amount of the award of attorney's fees it sought, so the attorney's fees BVA incurred while proving the reasonableness of the award should not have been included in it.

We disagree. Denton has conflated the standard for awarding attorney's fees as a form of sanctions under Code § 8.01-271.1 (which requires parties to make arguments "well grounded in fact," "warranted by existing law or a good faith argument for an extension, modification, or reversal of existing law," and "not interposed for any improper purpose") with the standard applicable for an award of attorney's fees under a contractual fee-shifting provision. In the latter, the award is not dependent on the opposing party's bad faith or lack of evidence. To the contrary, each party may genuinely believe in the legitimacy of its claims; "[n]either's position need be frivolous." *Lambert*, 293 Va. at 258, 798 S.E.2d at 185.

In a case where the prevailing party is entitled to an award of attorney's fees, the reasonableness of the award it seeks becomes an issue to be adjudicated in the case. *See Lee v. Mulford*, 269 Va. 562, 566, 611 S.E.2d 349, 351 (2005) (noting that where a plaintiff sought a jury trial in a breach of contract action and failed to request bifurcation of the issue of attorney's fees to be awarded under the contract, that issue too was committed to the jury for a decision). The attorney's fees that the prevailing party incurs while litigating the issue of attorney's fees are no different from those it incurs while litigating any other issue on which it prevails. Accordingly, this Court regularly permits awards of reasonable attorney's fees incurred by prevailing parties on appeal, even on the issue of whether the lower court's award of attorney's

fees was reasonable, when such relief is sought. *See*, *e.g.*, *Lambert*, 293 Va. at 259, 798 S.E.2d at 186-87 (remanding for an award of reasonable attorney's fees incurred during appeal); *Dewberry & Davis, Inc. v. C3NS, Inc.*, 284 Va. 485, 500, 732 S.E.2d 239, 246 (2012) (same); *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 431, 732 S.E.2d 690, 703 (2012) (same).

The circuit court therefore did not abuse its discretion by including in its award the attorney's fees BVA incurred while litigating the reasonableness of the award it sought, and we will not reverse its ruling.

## III. CONCLUSION

For the reasons set forth above, we will affirm the judgment of the circuit court. We will, however, remand the case for an award of the costs and reasonable attorney's fees BVA incurred in this appeal.

*Affirmed and remanded.*