Present:  All the Justices

WILLIAM E. BUTCHER, ET AL.

                                   OPINION BY
v.  Record No. 250213                         JUSTICE THOMAS P. MANN
                                       APRIL 23, 2026

GENERAL R.V. CENTER, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

This case arises from William and Traci Butcher's efforts to recover attorney fees incurred in an action against the manufacturer and dealer of a defective recreational vehicle ("RV").  The trial court awarded the Butchers their attorney fees for time spent pursuing and settling their underlying claims related to the vehicle but denied fees related to the litigation of their post-settlement motion for attorney fees.  The Butchers contend that the trial court abused its discretion in denying them this portion of their fees.  We disagree.  We find that the trial court acted within the proper bounds of its authority and did not abuse its discretion.  Accordingly, we affirm the judgment of the Court of Appeals.

## I.  BACKGROUND

### A.  Complaint and Settlement

In September 2021, the Butchers bought an RV camper from General R.V. Center, Inc. in Ashland, Virginia for about $80,000.  Due to various defects with the RV, the Butchers later requested that the manufacturer, Keystone R.V. Company, repurchase the camper.  Negotiations between the parties were unsuccessful, so the Butchers filed a complaint against the dealer and manufacturer (collectively, "Keystone") in the Circuit Court of Hanover County.

The complaint alleged, among other things, that Keystone had violated the Virginia Consumer Protection Act and the federal Magnuson-Moss Warranty Act.  The requested relief

included damages for these statutory violations, as well as "[r]easonable attorney's fees at a rate of $500.00 per hour or one-third of whatever is recovered, whichever is greater."[1]

There was minimal docket activity over the next year while the parties engaged in negotiations. On May 2, 2023, the parties signed a settlement agreement. Keystone agreed to repurchase the camper for $106,500. Keystone further stipulated, "[f]or purposes of attorney's fees only," that the Butchers were the "prevailing parties" for their Magnuson-Moss Warranty Act claim. In essence, the parties resolved the Butchers' complaint and agreed that the Butchers would be entitled to attorney fees under the federal statute's fee-shifting provisions,[2] but they did not finalize the amount owed for fees.

## B. Motion for Attorney Fees

James B. Feinman's law firm represented the Butchers in their dealings with Keystone, both before they filed their complaint and during the subsequent litigation and settlement. Throughout the settlement negotiations, Feinman refused to discuss a precise attorney fee amount. He contended that the resolution of the Butchers' substantive claims should occur separately from an agreement on attorney fees to avoid any conflicts of interest between himself

---

[1] The state and federal statutes both feature fee-shifting provisions, allowing a successful plaintiff to recover reasonable attorney fees and court costs. *See* Code § 59.1-204(B)-(D); 15 U.S.C. § 2310(d)(2).

[2] The Magnuson-Moss Warranty Act provides that a prevailing consumer

> may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2).

and his clients.[3]  Accordingly, when Keystone made offers for attorney fees during settlement negotiations, Feinman did not entertain these proposals.

Because of Feinman's insistence on bifurcating the settlement process, he first shared a proposed sum for his attorney fees after the parties had settled the substantive claims.  On May 19, 2023, he called Keystone's counsel with an offer to resolve the fees for $20,000.  He did not provide an itemized bill in support of his request.  Feinman gave Keystone three days to accept his offer.  Keystone declined.

Four months later, on September 18, 2023, the Butchers filed a motion for attorney fees in the trial court.  They sought an award of $40,810 in fees and $350.50 in costs.  A timesheet attached to the motion reflected 74.20 hours of Feinman's legal work from February 2022 to September 2023, as well as the time he expected to spend preparing for and appearing at the hearing on the motion.  Due to "considerable inflation" that occurred after the filing of their complaint, the Butchers also asked for leave to amend their ad damnum to award a higher hourly rate for attorney fees at "$550.00 per hour or one-third of the amount recovered, whichever is greater."

On October 12, 2023, Keystone's counsel texted Feinman.  She stated that Keystone "will go to $20,000" and "[t]hat is their max offer."  "Otherwise," Keystone would "want to proceed

---

[3] Feinman later explained his concerns in a trial court filing:

> If the attorney fees are negotiated at the same time as the underlying merits, invariably the client thinks that his lawyer is getting money that should go to him.  This is not only unwise, it borders on the unethical as it can be construed as maintaining the appearance of impropriety and presents an actual conflict between the interests of the client and the lawyer.

with the hearing [on the fee motion]." The Butchers declined because they had incurred additional fees above the $20,000 that they were willing to accept four months earlier.

Keystone subsequently filed a brief opposing the Butchers' motion, arguing that the requested $40,810 in attorney fees was excessive for a case that involved limited litigation activity. Keystone provided a timeline of the case. It also emphasized several factors that, in its view, undercut the Butchers' motion, including that: (1) Keystone had offered to repurchase the camper before the plaintiffs filed suit; (2) Keystone had repeatedly made offers for attorney fees but Feinman had refused to discuss his fees during settlement negotiations; (3) during negotiations, Keystone "did not serve written discovery, issue subpoenas, or notice depositions in an effort to avoid Plaintiffs incurring any unnecessary costs or fees" and it postponed a hearing on a motion to transfer venue; (4) the motion for fees was the first time that Feinman had provided an itemization of his attorney fees, "which more than doubled since May [2023], even though his clients' claims were settled" by that time; and (5) the timesheet entries were "vague" and "block billed," making it difficult to "properly evaluate whether the specific time expended was reasonable."

At a hearing on October 20, 2023, Feinman called himself as a witness. He testified about his nearly 40 years of practicing law, which have included a focus on Magnuson-Moss Warranty Act litigation. He highlighted his expertise in this area of law and noted that he was not aware of many other attorneys who routinely take these kinds of cases. He described the Butchers' case as "somewhat complex." He said that even though "the purchase price of the camper was simple to determine," there were "incidental and consequential damages that they sought pursuant to the Magnuson-Moss Act and Virginia contract warranty law" that required "a lot of proof" and "there was resistance from the defendants over and above the purchase price."

He said that he had obtained "excellent" results for the Butchers and that his requested hourly rate mirrored fee awards he received in other cases.

Keystone did not dispute Feinman's hourly rate at the hearing "because he is an expert in this field," but it maintained its objection to the overall requested fee award. Keystone told the trial court that "we didn't do anything to warrant any kind of fees being expended other than just negotiating a settlement and getting proof for the damages." In reviewing the billing entries, Keystone continued to challenge Feinman's "block billing" and argued that time entries showed that Feinman engaged in "pretty elementary research," for which someone with his expertise "shouldn't be billing the defense." Keystone also questioned Feinman's assertion that he obtained "a successful outcome" because it made a $98,898 repurchase offer before suit, which was not far off from the final settlement amount of $106,500.

An issue that emerged at the hearing was an inaccuracy in Feinman's billing records, specifically, whether the timesheet improperly attributed an associate's time to Feinman or omitted the associate's work. Keystone's counsel noted that she had negotiated with the associate early in the case but that the associate's time was not reflected in the timesheet. The trial court told Feinman that it would not review every line of the timesheet, but it needed "a breakdown" of each attorney's time. Feinman conceded that the associate "had no more than ten hours in this case," at a $250 hourly rate.

Feinman addressed Keystone's other critiques of his billing. He defended the time billed for legal research as necessary "because while the basics of law are similar, the individual issues that come up [in each case] are not similar." Moreover, Feinman said that his bill was accurate because it summarized his work and provided dates and hours for the entries.

Finally, Feinman emphasized the importance of recovering all requested attorney fees in a case with statutory fee shifting. He said if attorneys "go through a lot" to get their fees and are not compensated for that time, "it reduces the effective rate" and is contrary to legislative intent "in terms of getting attorneys who represent consumers in these cases paid."

After considering "all of the evidence," including Keystone's pre-litigation offer, the final settlement, Feinman's hourly rate, the time spent on legal work, and information presented at the hearing, the trial court awarded the Butchers $24,885 in attorney fees. The trial court arrived at this figure by deducting 19.43 hours spent litigating the fees from the requested 74.20 hours and recalculating 10 of the remaining hours at the associate's $250 hourly rate. In sum, the trial court awarded the Butchers attorney fees for 44.77 hours at $500 an hour and 10 hours at $250 an hour. The trial court also awarded $485.42 in costs.

The trial court explained that its exclusion of the post-settlement activity on the motion for attorney fees was "based on the facts of the case and the circumstances surrounding the case." It added, "I agree with you, [C]ongress wants consumers to have an option to come to court, I don't have any problem with that, but, basically, you spent 20 hours at $500 an hour to try to recover your fees."

Feinman objected to the court's reduction of the hours spent litigating the fees because "the overwhelming law is that if a lawyer has to litigate his fees, he's entitled to be paid for it." The trial court disagreed: "Based on the facts and circumstances of this case, just the facts of this case, and so I don't find that that was a reasonable expenditure to recover where we are, so I'm not awarding it." The trial court entered a written order the same day reflecting the overall

$24,885 attorney fees award[4] and $485.42 in costs.[5]  The Butchers objected to the order for reasons "stated on the record" and because "[i]t is legal error not to compensate the attorney for the time spent litigating fees."

After the hearing, the Butchers moved the trial court to reconsider the fee award.  They argued that, under Virginia law, an attorney can collect a reasonable fee for time spent litigating attorney fees and that the trial court abused its discretion by failing to award any fee for time spent litigating the fees.  The trial court denied the motion in a written order.

The Butchers appealed.

## C.  Court of Appeals

In an unpublished opinion, the Court of Appeals affirmed the judgment of the trial court. *Butcher v. Gen. R.V. Ctr, Inc.*, No. 1995-23-2, 2025 Va. App. LEXIS 22, at *8-14 (Jan. 14, 2025). The Butchers argued, among other things, that the trial court considered an "irrelevant or improper factor" by excluding fees incurred while litigating attorney fees.  *Id*. at *12.  The Court of Appeals rejected that argument, finding that the Butchers misconstrued the trial court's holding:  "The court did not decline to award the additional 19.43 hours *because* they were incurred in litigating the fee issue.  Rather, the trial court held that portion of the incurred fees not reasonable 'based on the facts and circumstances of this case.'"  *Id*. (emphasis in original). The Court of Appeals likewise rejected an argument that no "facts and circumstances" supported the trial court's fee determination besides the fact that the Butchers incurred time litigating their fees.  *Id*. at *13-14.  It noted that the trial court considered the "entire case, including all the

---

[4] By finding Feinman's hourly rate of $500 reasonable, the trial court impliedly denied the Butchers' request for $550 per hour.  The $500 rate is not at issue on appeal.

[5] This award of costs included a $153.01 bill for Feinman's stay at a hotel the night before the hearing.  The cost award was not challenged on appeal.

various phases of the litigation," in finding that a portion of the fees—over 50 hours of legal work—was reasonable "to litigate a case involving few filings and court appearances." *Id*. Accordingly, the Court of Appeals held that the trial court did not abuse its discretion by awarding some, but not all, of the requested attorney fees. *Id*. at *14. We granted the Butchers an appeal from this decision.[6]

## II. ANALYSIS

### A. Standard of Review

"On appeal, we will set aside a trial court's determination of the amount of attorneys' fees to be awarded only if the court abused its discretion." *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 333 (2020) (quoting *West Square, LLC v. Communication Technologies*, 274 Va. 425, 433 (2007)). "The three principal ways a court abuses its discretion are 'when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.'" *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 252-53 (2017) (quoting *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 429 (2012)). "A trial court may also abuse its discretion by basing its decision on an erroneous legal conclusion." *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 66 (2014).

"A prevailing party entitled by law to an award of attorney fees has the burden of proving 'that the requested fees are reasonable and that they were necessary.'" *Sidya v. World Telecom*

---

[6] In their appeal to the Court of Appeals, the Butchers also challenged the trial court's admission and consideration of evidence related to a pre-lawsuit settlement offer. *Butcher*, 2025 Va. App. LEXIS 22, at *14. That issue is not before us in this appeal.

*Exch. Communs., LLC*, 301 Va. 31, 46 (2022) (quoting *West Square, LLC*, 274 Va. at 433). We have identified several factors for courts to consider when assessing reasonableness:

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Portsmouth 2175 Elmhurst, LLC*, 298 Va. at 333 (quoting *Denton v. Browntown Valley Assocs., Inc.*, 294 Va. 76, 88 (2017)). Nevertheless, "a fact-finder is not required to consider all of the[se] factors . . . in every situation" because the significance of certain factors will depend on the specific circumstances of each case. *Id.* at 334.

**B. The Trial Court Did Not Abuse Its Discretion**

The Butchers contend that the trial court abused its discretion in a multitude of ways. They argue that the trial court's failure to award attorney fees for time spent litigating those fees was "clear legal error" because the trial court disregarded case law holding that such fees "are no different from those [a prevailing party] incurs while litigating any other issue on which it prevails." The Butchers also assign error to the trial court's failure to consider "uncontradicted facts," including Keystone's rejection of the Butchers' initial May 2023 offer to accept $20,000 for the attorney fees and the Butchers' rejection of Keystone's October 2023 offer for the same amount. These dynamics, the Butchers argue, left them with no other choice than a judicial resolution. They contend it was erroneous for the trial court to simultaneously hold (1) that the attorney fees incurred litigating and settling the underlying substantive claims were reasonable and (2) that fees incurred while litigating to recover those reasonable fees were not recoverable.

Any attorney fees sought in a fee petition must be reasonable. This reasonableness requirement applies to fees incurred while litigating both the substantive merits of a case and the

issue of attorney fees (i.e., "fees on fees").[7] *See Denton*, 294 Va. at 90 ("The attorney's fees that the prevailing party incurs while litigating the issue of attorney's fees are no different from those it incurs while litigating any other issue on which it prevails."); *Portsmouth 2175 Elmhurst, LLC*, 298 Va. at 334 ("Under settled law, when a litigant seeks to pass along to an adversary the cost of attorney's fees, whether pursuant to a statute or a contract, a reviewing court must satisfy itself that the fees sought are reasonable.").

The Butchers presuppose that their fees on fees were reasonable and necessary because they were incurred while seeking an award for legal work on their substantive claims that the trial court ultimately found reasonable. But the Butchers overlook three aspects of the record that supported the trial court's conclusion that the requested fees on fees were not "a reasonable expenditure."

First, it would have been reasonable for the trial court to question whether the time and effort expended in pursuit of attorney fees was reasonable or necessary after considering the history of the case. The record shows that Keystone repeatedly tried to address attorney fees and that the Butchers forcefully rejected those efforts.[8] All sides agreed, however, that the Butchers would be entitled to attorney fees as the prevailing party on the Magnuson-Moss claim. Yet, when the Butchers finally extended an offer, they did not provide any documentation to support

---

[7] Nothing in the Magnuson-Moss Warranty Act calls this into question. It provides that a plaintiff's attorney fees must be "reasonably incurred." 15 U.S.C. § 2310(d)(2).

[8] For instance, in an August 2022 e-mail, Feinman informed Keystone's counsel that he would not negotiate his attorney fees "until my clients' interests are satisfied" because he did not want to create any conflict of interest between himself and the Butchers. He added, "I know your client wants to pay the least amount of attorney fees and cost [sic] to me as possible. However, if you keep putting me into a potential conflict with my client I will not negotiate with you at all and simply go to trial. Of course, this will magnify the fees for me and you by many multiples."

the $20,000 figure and gave Keystone only three days to respond.  It appears that the Butchers did not engage in further substantive negotiations with Keystone before proceeding with their motion for attorney fees.[9]  Subsequently, their requested legal fees ballooned from $20,000 to over $40,000.  Based on this record, it would have been reasonable for the trial court to find that Keystone demonstrated a willingness to negotiate throughout the case.  It could have also found that it was unreasonable for the Butchers to make a single offer with such a short acceptance window and then spend the next four months racking up substantial attorney fees.  Much, if not all, of the attorney fee litigation could have been avoided through negotiation under the facts of this particular case.

Second, the trial court could have found that the limited scope of litigation activity in this case undercut the appropriateness of doubling the attorney fees after the merits of the case were settled.  As the Court of Appeals correctly noted, Keystone "engaged in minimal litigation before the attorney fees issue arose, propounding no discovery requests and choosing not to pursue motions to dismiss or transfer venue." *Butcher*, 2025 Va. App. LEXIS 22, at *11.  And, after the Butchers filed their complaint, their next pleading was a motion for attorney fees. *Id.*  After considering the overall nature of services rendered throughout the case and the complexity of the attorney fees litigation—which addressed a basic matter of determining the amount of

---

[9] There is limited information about what, if any, interactions the parties had in the four months preceding the Butchers' motion for attorney fees.  Keystone's counsel told the trial court that they never had a "meet and confer" about the fees and that the first time she ever saw a timesheet was when the Butchers filed their motion.  Feinman's timesheet reports that he engaged in "[c]orrespondence with opposing counsel" on August 1, 2023.  But no other outreach from the Butchers to Keystone is documented on the timesheet between May 19, 2023 (when the Butchers offered to accept $20,000 for their attorney fees), and September 18, 2023 (when the Butchers filed their motion).  An affidavit from Feinman submitted with the Butchers' motion to reconsider refers to "several phone calls" made to Keystone's counsel "in an effort to resolve the matter," although it is unclear when these calls occurred.

11

recoverable fees—it would be reasonable for the trial court to find that the time and fees incurred in bringing the fee motion were excessive. *See Lambert*, 293 Va. at 257 (noting that the "number of tasks and the time required for them" in a case will "vary based on the vigor with which the opposing party responds" and that a court has a "duty to assess the necessity of those tasks, the time spent on them, and the rate charged 'under the facts and circumstances of the particular case.'") (quoting *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991)).

Finally, the trial court could have considered various defects in Feinman's timesheets to find that there were legitimate concerns about the records' accuracy and reasonableness. Notably, the timesheet misattributed to Feinman billable hours incurred by an associate at his law firm. Feinman ultimately conceded that these 10 hours were not his own. Still, other problems cast a cloud over the bill—particularly Feinman's use of block billing[10] and his apparent failure to maintain contemporaneous time records.[11] Neither practice renders a requested fee amount

---

[10] For instance, an entry on Feinman's timesheet for March 30, 2023, lists 2.15 hours for "[c]onference with opposing counsel regarding settlement of the case; conference with clients regarding settlement of the case; correspondence to the Court; receiving/reviewing correspondence from the Court; new correspondence to the Court; conference with opposing counsel." Likewise, on August 1, 2023, Feinman billed 2.35 hours for "[c]orrespondence with opposing counsel; drafting and revising Memorandum in Support of Motion for Attorney Fees." These kinds of entries constitute block billing because they do not specify the time devoted to each task. *See, e.g., McAfee v. Boczar*, 738 F.3d 81, 90 (4th Cir. 2013) (describing block billing as "lumping tasks together in time entries rather than making such entries task-by-task.").

[11] Feinman told the trial court that he "[tries]to resolve these things, because I don't really like writing these memorandums and *having to go back and recapture all the time* and, you know, I try to get them resolved and you go to the next case." (Emphasis added.) He also informed the trial court in an affidavit that on July 17, 2023, he "began to review the [case] file . . . to make sure I had captured all the time I had expended [o]n th[e] case," which is reflected in the timesheet entry for that date. The trial court could have inferred from these statements that portions of Feinman's records were neither constructed contemporaneously nor, at least, constructed within a reasonable amount of time after the billed tasks occurred.

12

*per se* unreasonable, but these approaches to billing are generally disfavored.[12]  Here, the trial court could have properly factored these aspects of Feinman's billing records into its overall assessment of the reasonableness of the requested fees.[13]

In sum, the trial court did not operate in a vacuum when it declined to award attorney fees for the 19.43 hours spent litigating the fees.  It properly considered all the facts and circumstances of this case to conclude that the Butchers did not carry their burden to prove that this portion of their requested fees was reasonable and necessary.[14]  *See Sidya*, 301 Va. at 46; 15 U.S.C. § 2310(d)(2) (requiring that costs and expenses must be "reasonably incurred" and allowing a court to exercise discretion in determining whether an award of attorney fees "would be inappropriate").  To be sure, reasonable jurists could differ as to whether these fees should be

---

[12] To state the obvious, time records recorded when a task is completed are usually more accurate than records constructed after the fact.  Thus, we have found contemporaneous time records can support a trial court's award of attorney fees.  *See Tazewell Oil Co. v. United Va. Bank/Crestar Bank*, 243 Va. 94, 111-12 (1992) (affirming trial court's fee award where evidence included "almost 300 pages of contemporaneous time records detailing the activities for which fees were sought.").  While we acknowledge that this Court has not specifically addressed the propriety of block billing, we note that, as a general matter, block billing can be problematic because it obscures the time spent on individual tasks, which, in turn, hinders the ability of an opposing party and the courts to assess the reasonableness of a movant's requested attorney fees.

[13] This conclusion is bolstered by the Magnuson-Moss Warranty Act's fee-shifting provision, which allows a plaintiff to recover "cost and expenses (including attorneys' fees *based on actual time expended*) determined by the court to have been reasonably incurred."  15 U.S.C. § 2310(d)(2) (emphasis added).  It is hard to imagine how a court would assess "actual time expended" without evaluating the accuracy of time records.

[14] To the extent that the Butchers contend that the trial court was obligated to state the precise grounds for its decision, *see* Op. Br. at 21 (asserting that "[t]he only grounds articulated or expressed by the trial court itself were the fact that, 'basically, you spent 20 hours at $500 an hour to try to recover your fees'"), we reiterate that, while it would be helpful to do so from an appellate perspective, "[t]here is no general requirement that trial courts must state for the record the reasons underlying their decisions."  *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015).  In any event, the trial court stated that its decision was based on "the facts of the case and the circumstances surrounding the case."

awarded. But "[o]nly when reasonable jurists could *not* differ can we say an abuse of discretion has occurred." *Harris v. Joplin*, 304 Va. 338, 347 (2025) (emphasis added) (quoting *Du v. Commonwealth*, 292 Va. 555, 564 (2016)). That is not the case here. Accordingly, the trial court did not abuse its discretion in making its fee award.

### III. CONCLUSION

The trial court acted within its discretion in finding that the Butchers' attorney fees arising from the fee petition litigation were not reasonable in the specific circumstances of this case. We appreciate that fee-shifting statutes like the Magnuson-Moss Warranty Act incentivize attorneys to take cases on behalf of consumers who may otherwise struggle to obtain legal representation. And we recognize that attorneys want to be paid for all the time they devote to a case, including time spent litigating fees. But any recoverable attorney fees must be *reasonable*. Even though "fees on fees" were not awarded here, they may be entirely reasonable in other circumstances. Therefore, for the reasons set forth herein, we affirm the judgment of the Court of Appeals.

*Affirmed.*